IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GORDIAN MEDICAL, INC. d/b/a ) <br> AMERICAN MEDICAL TECHNOLOGIES and ) <br> AMT ULTIMATE HOLDINGS, L.P., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MISTY VAUGHN and CURITEC, LLC, ) <br> ) <br> Defendants. ) | Civil Action No. 22-319-MN-SRF |

## REPORT AND RECOMMENDATION

Presently before the court in this diversity action for breach of contract and tortious interference with contract is defendant Curitec, LLC's ("Curitec") motion to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] (D.I. 9) For the following reasons, I recommend that the court GRANT Curitec's motion to dismiss.

I. **BACKGROUND**

Plaintiffs Gordian Medical, Inc., d/b/a American Medical Technologies ("AMT") and AMT Ultimate Holdings, L.P. ("Holdings;" collectively, "Plaintiffs") initiated this civil action for breach of contract and tortious interference with contract on March 4, 2022 in the Delaware Court of Chancery. (D.I. 1-1) On March 11, 2022, defendants Misty Vaughn and Curitec (collectively, "Defendants") removed the action to this court, which has diversity jurisdiction pursuant to 28 U.S.C. § 1332 based on the complete diversity of citizenship between Plaintiffs and Defendants. (D.I. 1 at ¶¶ 3, 5)

---

[1] The briefing and related filings associated with the pending motion to dismiss are found at D.I. 13 and D.I. 16.

AMT is a Nevada corporation with corporate headquarters located in Irvine, California. (D.I. 1-1 at ¶ 11) AMT is a senior care company and independent provider of wound care solutions offering programs to health care providers in long-term senior care and post-acute environments. (*Id.* at ¶ 4) Holdings is a Delaware limited partnership serving as the indirect parent of AMT. (*Id.* at ¶¶ 7, 10)

Vaughn is a citizen of South Carolina and a former employee and senior executive of AMT who is currently employed by Curitec. (*Id.* at ¶¶ 5, 12-13) Curitec, a Florida limited liability company with corporate headquarters located in Texas, is a direct competitor of AMT.[2] (*Id.* at ¶¶ 3, 14)

In her former role as Senior Vice President of Post-Acute Operations & Clinical Services at AMT, which involved negotiating AMT's supply agreements and maintaining relationships with vendors and strategic business partners, Vaughn had access to AMT's confidential, proprietary, and trade secret information. (D.I. 1 at ¶¶ 6, 9, 22-23) Vaughn's employment was governed by a June 10, 2021 employment agreement (the "Agreement") that contained a non-competition clause to protect AMT's proprietary information. Pursuant to this provision, Vaughn agreed not to:

> directly or indirectly, own, manage, operate, control, be employed by (whether as an employee, consultant, independent contractor or otherwise, and whether or not for compensation) or render services to any person, firm, corporation or other entity, in whatever form, engaged in the business of providing wound care supplies or related wound care evaluation, treatment and management services, ostomy, urological or tracheostomy services and training and education in any setting, whether in a facility, a clinic, in home-based care or otherwise (the "Restricted Business"), within (A) the United States or (B) any other country in which the Company Group conducts the Restricted Business during the Executive's employment or service with the Company Group during the Restricted Period.

---

[2] The only two members of Curitec are Maria Percival and Nick Percival. (D.I. 9, Ex. A at ¶¶ 2-3) Both members have resided in Texas since 2020, and their residence remains Curitec's principal place of business. (*Id.* at ¶ 5)

2

(D.I. 1-1 at ¶¶ 32, 37; Ex. A at § 9(b)) The Agreement also prohibited Vaughn from soliciting AMT's customers and employees or otherwise interfering with AMT's business relationship with its customers for a period of twenty-four months following the termination of her employment with AMT. Specifically, Vaughn agreed not to:

> directly or indirectly, individually or on behalf of any other person, firm, corporation or other entity, (i) solicit, aid or induce any Person . . . who is, as of the Executive's termination date, or was, during the eighteen (18)-month period immediately preceding the Executive's termination date, a customer of the Company Group to purchase goods or services related to the Restricted Business from another person, firm, corporation or other entity or assist any other person or entity in identifying or soliciting any such customer, (ii) solicit, aid or induce any Person who is, as of the Executive's termination date, or was, within the eighteen (18)-month period prior to such solicitation, aid or inducement, an employee, representative or agent of the Company Group to leave such employment or retention to accept employment with or render services to or with any other person, firm, corporation or other entity unaffiliated with the Company Group or hire or retain any such Person who is, as of the Executive's termination date, or was, within the eighteen (18)-month period prior to such hiring or retainer, an employee, representative or agent, or take any action to materially assist or aid any other person, firm, corporation or other entity in identifying, hiring or soliciting any such employee, representative or agent; or (iii) intentionally interfere, or intentionally aid or induce any other person or entity in interfering, with the relationship between the Company Group and any of their respective vendors, joint venturers or licensors which causes harm to the Company Group.

(D.I. 1-1 at ¶ 38; Ex. A at § 9(c)) On July 31, 2021, Vaughn also executed an agreement with Holdings containing nearly identical restrictive covenants (the "Equity Agreement;" together with the Agreement, the "Agreements"). (D.I. 1-1 at ¶¶ 43-52) Both the Agreement and the Equity Agreement contain forum selection clauses in which Vaughn consented to the exclusive jurisdiction of courts located in Delaware:

> This Agreement, the rights and obligations of the parties hereto, and all claims or causes of action (whether at law or in equity, in contract, in equity, in statute, in tort or otherwise) that may be based upon, arise out of or relate to this Agreement or the Executive's employment by the Company or any member of the Company Group, or the negotiation, execution or performance thereof, or the transactions contemplated hereby (any such claim or cause of action, a "Claim"), shall be

3

> governed by and construed solely and exclusively in accordance with the internal laws of the State of Delaware, including its statutes of limitations, but without regard to the choice of law provisions thereof. Each of the parties agrees that any dispute between the parties shall be resolved solely and exclusively in the courts of the State of Delaware or the United States District Court for the District of Delaware and the appellate courts having jurisdiction of appeals in such courts (the foregoing courts, collectively, the "Chosen Courts"). In that context, and without limiting the generality of the foregoing, each of the parties hereto irrevocably and unconditionally (a) submits in connection with any proceeding relating to any Claim to the sole and exclusive jurisdiction of the Chosen Courts, and agrees that all Claims shall be heard and determined solely and exclusively in the Chosen Courts; (b) consents that any such Claim may and shall be brought solely and exclusively in the Chosen Courts and waives any objection that the Executive or the Company may now or thereafter have to the venue or jurisdiction of any such Claim in any such Chosen Court or that such Claim was brought in an inconvenient court and agrees not to plead or claim the same; (c) WAIVES ALL RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY CLAIM; (d) agrees that service of process in connection with any such Claim may be effected by delivering a copy of such process to such party as provided in Section 14 hereof; and (e) agrees that nothing in this Agreement shall affect the right to effect service of process in any other manner permitted by the laws of the State of Delaware. Each party shall pay all of its own costs and expenses, including, without limitation, its own legal fees and expenses.

(*Id.* at ¶¶ 41, 51; Ex. A at § 18)

Vaughn resigned from her employment with AMT on January 12, 2022. (D.I. 1-1 at ¶ 60) On February 7, 2022, Vaughn confirmed that she had taken a position at Curitec following her employment at AMT. (*Id.* at ¶ 61) In response, Plaintiffs sent separate cease-and-desist letters to Vaughn and Curitec on February 11, 2022 informing them that Vaughn's employment with Curitec violated the restrictive covenants in the Agreements. (*Id.* at ¶ 63; D.I. 13, Ex. A at Exs. 1-2) Plaintiffs subsequently filed its verified complaint in the Delaware Court of Chancery, alleging that Vaughn breached the terms of the Agreements by obtaining employment with Curitec, and Curitec tortiously interfered with Plaintiffs' contractual relationship with Vaughn by employing her. (D.I. 1-1)

## II. LEGAL STANDARD

Rule 12(b)(2) of the Federal Rules of Civil Procedure directs the court to dismiss a case when the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence and must do so by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Turner v. Prince George's County Public Schools*, 694 F. App'x 64, 66 (3d Cir. 2017) (internal citations and quotation marks omitted). To meet this burden, the plaintiff may produce "sworn affidavits or other competent evidence" outside the pleadings. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). In the absence of an evidentiary hearing, however, "the plaintiff need only establish a prima facie case of personal jurisdiction." *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). The court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Id.*

To establish personal jurisdiction, the plaintiff must demonstrate facts sufficient to satisfy both a statutory and a constitutional requirement. *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). With respect to the statutory analysis, the court analyzes the long-arm statute of the state in which the court is located. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Delaware's long-arm statute requires a showing of specific jurisdiction arising from the defendant's activities within the forum state, or general jurisdiction based on continuous or systematic contacts with the forum state. 10 *Del. C.* § 3104(c); *see Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 622

(D. Del. 2015); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1466 (D. Del. 1991). The court must then determine whether the exercise of personal jurisdiction comports with due process by analyzing whether the plaintiff has demonstrated that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so that it should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted).

## III. DISCUSSION

There is no dispute between the parties that Delaware law applies. (D.I. 13 at 5) The Agreement and Equity Agreement at the heart of this contractual dispute are governed by the laws of the State of Delaware. (D.I. 1-1 at ¶ 40; Ex. A at § 18)

### A. Personal Jurisdiction under the Forum Selection Clauses

Curitec argues that the complaint's allegations regarding its business activities and contacts in Delaware, which are made only "upon information and belief," lack the requisite particularity to establish a *prima facie* case of personal jurisdiction under either the Delaware long-arm statute or the Due Process Clause. (D.I. 9; *see* D.I. 1-1 at ¶¶ 15, 17) In response, Plaintiffs do not contend that Curitec is subject to general jurisdiction in Delaware or that it has any contacts in Delaware that would support the exercise of specific jurisdiction. (D.I. 13; D.I. 16 at 1)

"Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction." *Bell Helicopter Textron, Inc. v. C&C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). Here, Curitec has produced a sworn declaration confirming that Curitec has no contacts with Delaware. (D.I. 9,

6

Ex. A at ¶¶ 6-14) Plaintiffs have not provided any evidence refuting Curitec's allegations or evidence. By declining to establish Curitec's alleged contacts with Delaware through sworn affidavits or other competent evidence, Plaintiffs have failed to satisfy their burden to show personal jurisdiction under the Delaware long-arm statute or the Due Process Clause. *See E.I. du Pont de Nemours & Co. v. Agfa-Gavaert NV*, 335 F. Supp. 3d 657, 665 (D. Del. 2018) (citing *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661, 670 (D. Del. 2008)). The jurisdictional allegations in the complaint made "upon information and belief" are not sufficient to establish personal jurisdiction in response to a Rule 12(b)(2) motion to dismiss supported by a sworn declaration. *See id.* at 665-66 (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.")).

The personal jurisdiction requirement is waivable, and parties to a contract may voluntarily consent to personal jurisdiction by agreeing to a forum selection clause. *See Bus Air, LLC v. Woods*, C.A. No. 19-1435-RGA-CJB, 2019 WL 6329046, at *15-16 (D. Del. Nov. 26, 2019), *report and recommendation adopted*, 2019 WL 8137577 (D. Del. Dec. 17, 2019); *see also Eastman Chem. Co. v. AlphaPet Inc.*, C.A. No. 09-971-LPS-CJB, 2011 WL 6004079, at *4 (D. Del. Nov. 4, 2011) (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999) ("When a party is bound by a forum selection clause, the party is deemed to have expressly consented to personal jurisdiction.")). When a defendant consents to personal jurisdiction under a valid forum selection clause, there is no need to perform a jurisdictional analysis under the Delaware long-arm statute and the Due Process Clause. *See Truinject Corp. v. Nestle Skin Health, S.A.*, C.A. No. 19-592-LPS-JLH, 2019 WL 6828984, at *8 (D. Del. Dec. 13,

7

2019) (citing *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008)). Instead of establishing facts to support the exercise of specific or general jurisdiction over Curitec in Delaware, Plaintiffs allege that Curitec consented to jurisdiction in Delaware because it is bound by the Delaware forum selection clauses in the Agreements executed by Plaintiffs and Vaughn. (D.I. 13 at 9)

There is no dispute in this case that Curitec is not a signatory to the Agreements. *See Truinject*, 2019 WL 6828984, at *9 ("Under Delaware law, usually only a party that has signed an agreement is bound by it."). The question before the court is whether Curitec should nonetheless be bound by the forum selection clauses in those Agreements. Delaware courts consider three factors to determine whether a non-signatory to an agreement should be bound by its forum selection clause: (1) whether the forum selection clauses are valid; (2) whether Curitec, as the non-signatory, is a third-party beneficiary of the Agreements or "closely related" to the Agreements; and (3) whether Plaintiffs' claim against Curitec arises from Curitec's status in relation to the Agreements. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015). The court addresses each of these considerations in turn.

### 1. Curitec has not overcome the presumption that the forum selection clauses are valid.

A forum selection clause is presumptively valid and should be enforced unless it is established that: "(i) it is a result of fraud or overreaching; (ii) enforcement would violate a strong public policy of the forum; or (iii) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Hadley v. Shaffer*, C.A. No. 99-144-JJF, 2003 WL 21960406, at *4 (D. Del. Aug. 12, 2003); *see also QVC, Inc. v. Your Vitamins, Inc.*, 753 F. Supp. 2d 428, 432 (D. Del. 2010) (quoting *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983)). Here, Curitec

8

challenges the validity of the forum selection clauses under the first and third factors. (D.I. 16 at 5-7)

First, Curitec argues that the forum selection clauses are not valid because Plaintiffs fraudulently induced Vaughn to execute the Agreements by concealing the unlawful nature of their operations. (D.I. 16 at 5-6) In support of this argument, Curitec relies on a complaint recently filed by Vaughn in the Southern District of South Carolina alleging that AMT engaged in fraudulent business practices.[3] (*Id.* at 5) However, the case is outside of this district, Curitec is not a party to the litigation, and the allegations are yet to be proven. Curitec's reliance on that complaint is therefore insufficient to establish that Vaughn's agreement to the forum selection clauses was the result of fraud or overreaching. *See MoneyGram Payment Sys. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 847 (3d Cir. 2003).

Next, Curitec argues that enforcement of the forum selection clauses would result in serious and unreasonable inconvenience to Curitec due to its incorporation in Florida and its headquarters in Texas. (D.I. 16 at 6-7) But this is not enough to satisfy Curitec's heavy burden to show that the forum selection clauses will result in serious and unreasonable inconvenience. *See, e.g., BB&T Commercial Equip. Capital Corp. v. Neighbors Legacy Holdings, Inc.*, 2017 WL 10607258, at *1 n.1 (E.D. Pa. Dec. 11, 2017) (rejecting argument that forum selection cause should be invalidated due to inconvenience of transporting records and witnesses from Texas to

---

[3] The parties here are no strangers to litigation. AMT previously filed a lawsuit against Curitec and its members in the Central District of California for misappropriation of trade secrets, unfair competition, intentional interference with business relations, slander, and breach of contract. *See Gordian Med., Inc. v. Percival*, C.A. No. 8:19-2244-JVS-ADS (C.D. Cal. 2020). The case settled and was dismissed in early 2021. *Id.* at D.I. 79; D.I. 80. Misty Vaughn sued AMT in the Southern District of South Carolina for declaratory judgment, equitable estoppel and unclean hands, and libel. *Vaughn v. Gordian Med., Inc.*, C.A. No. 6:22-675-DCC (D.S.C. Mar. 3, 2022). The case is in its early stages, with a pending motion to dismiss or transfer. *Id.* at D.I. 6.

9

Pennsylvania). Consequently, neither of Curitec's arguments is sufficient to overcome the presumptive validity of the forum selection clauses.

### 2. Curitec is not bound by the forum selection clauses under the "closely related" doctrine.

A non-signatory to a contract is considered "closely related" to the agreement only if: "(1) the non-signatory received a 'direct benefit' from the agreement; or (2) it was 'foreseeable' that the non-signatory would be bound by the agreement." *Truinject*, 2019 WL 6828984, at *12 (citing *Eastman Chem.*, 2011 WL 6004079, at *9; *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *4 (Del. Ch. Sept. 18, 2019)). Plaintiffs have not identified any direct benefit received by Curitec from the Agreements. Instead, Plaintiffs argue it was foreseeable that Curitec might be subject to the terms of the Agreements because it hired Vaughn in contravention of the restrictive covenants in the Agreements. (D.I. 13 at 11)

I recommend that the court grant Curitec's motion to dismiss for lack of personal jurisdiction because Curitec is not bound by the forum selection clauses under the "closely related" doctrine. The exercise of personal jurisdiction over a non-signatory to a contract under the "closely related" test raises significant due process concerns. Indeed, no court in this district has ruled that exercising personal jurisdiction solely on the basis that a non-signatory is "closely related" satisfies the constitutional due process requirement, absent a showing of minimum contacts. In *Truinject*, the court expressed "serious questions about the constitutionality of using the 'closely related' test to exercise personal jurisdiction over a non-signatory to a contract with a forum selection clause" and suggested that, "[u]nder those circumstances, a court should not exercise jurisdiction unless the record otherwise demonstrates 'minimum contacts' between the defendant and the forum." *Truinject*, 2019 WL 6828984, at *11.

Jurisdiction under a forum selection clause is based on consent, as opposed to minimum contacts, and a non-signatory to the agreement has made no express contractual waiver of jurisdiction under the forum selection clause. *See id.*; *see also Guaranteed Rate, Inc. v. Conn*, 264 F. Supp. 3d 909, 925-26 (N.D. Ill. 2017) (analyzing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)). These due process concerns are heightened when the non-signatory did not participate in negotiations leading up to the execution of the relevant agreement. *See Zausner Foods Corp. v. ECB USA, Inc.*, 2022 WL 609110, at *6 n.9 (D. Del. Jan. 31, 2022), *report and recommendation adopted*, 2022 WL 884235 (D. Del. Mar. 25, 2022).

Here, Curitec did not participate in the negotiation of Plaintiffs' Agreements with Vaughn, or otherwise manifest its consent to the forum selection clauses therein, at any time prior to hiring Vaughn. Although the complaint suggests that Curitec was aware of Vaughn's former employment with AMT and her post-employment obligations under the Agreements "[b]efore it offered employment to Vaughn," there is no evidence that Curitec was aware of the restrictive covenants in the Agreements prior to the February 11, 2022 correspondence from AMT.[4] (D.I. 1-1 at ¶¶ 88-89; D.I. 13, Ex. A at Ex. 2) At that point, Curitec had already hired Vaughn. (D.I. 1-1 at ¶ 61) And for the reasons set forth at § III.A, *supra*, there is no evidence supporting a conclusion that Curitec has minimum contacts with this forum. Consequently, enforcement of the forum selection clause against Curitec would be inconsistent with principles of constitutional due process. *See Truinject*, 2019 WL 6828984, at *11 ("Exercising personal jurisdiction solely on the basis that a non-signatory is 'closely related' to a contract with a forum

---

[4] Plaintiffs' answering brief confirms that Curitec became aware of the Agreements upon its receipt of the February 11, 2022 correspondence: "As of the date on which Curitec ignored Plaintiff's demands to honor the terms of the Agreements, Curitec was almost certainly aware of: (1) the contents of the Agreements; (2) Plaintiffs' position that employing Vaughn violated the Agreements; and (3) Plaintiffs' intention to enforce the Agreements." (D.I. 13 at 12)

selection clause—absent facts establishing 'minimum contacts' with the forum—would not . . . satisfy constitutional due process.").

Moreover, "Delaware courts have cautioned against relying on foreseeability alone to satisfy the closely related test[.]" *Finjan LLC v. Trustwave Holdings, Inc.*, C.A. No. 20-371-LPS, 2021 WL 5051147, at *9 (D. Del. Oct. 29, 2021) (citing *Neurvana*, 2019 WL 4464268, at *5); *see also Guaranteed Rate*, 264 F. Supp. 3d at 926 ("If foreseeability cannot establish minimum contacts, it should not be a sufficient basis for finding a waiver of implied consent either."). In *Neurvana*, the Court of Chancery discussed the application of the foreseeability inquiry as a standalone basis for satisfying the closely related test in two scenarios, neither of which are analogous to the facts of this case. *Neurvana*, 2019 WL 4464268, at *5 (discussing circumstances in which: (1) a plaintiff attempts to use the defendant's non-signatory status offensively to avoid enforcement of the forum selection clause, and (2) a signatory controlling company uses controlled non-signatories to avoid enforcement of the forum selection clause). The *Neurvana* court emphasized the importance of applying the foreseeability analysis narrowly: "To ensure a workable closely-related test, Delaware courts are wise to exercise caution in extending the foreseeability inquiry beyond the facts of" the two scenarios discussed. *Id.* Extending the "closely related" foreseeability doctrine to a competitor employer based on a forum selection clause in an employment agreement between a plaintiff and its former employee would necessarily expand the doctrine.

Plaintiffs argue it was foreseeable that Curitec would be implicated in this dispute to enforce the Agreements because Curitec maintained Vaughn's employment after being informed of the Agreements. (D.I. 13 at 12) Plaintiffs rely on a Delaware Court of Chancery decision in arguing that foreseeability rests on recent conduct by the non-signatory, and not its conduct at the

12

time the agreement in issue was negotiated. (*Id.* at 11); *see Capital Grp. Cos., Inc. v. Armour*, 2004 WL 2521295, at *6 n.40 (Del. Ch. Nov. 3, 2004). But the Court of Chancery explained that "[g]enerally, cases applying this doctrine involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the forum selection clause in the contract." *Id.* at *6. In this case, there is no allegation that Curitec embraced any portion of the Agreements. Indeed, the evidence suggests that Curitec did not become aware of the Agreements until after it had already hired Vaughn. (D.I. 13, Ex. A at Ex. 2)

Also, "the foreseeability of that risk does not mean the nonsignatory *intended to relinquish* its constitutional right to be free from suit except in a forum with which it has minimum contacts." *Guaranteed Rate*, 264 F. Supp. 3d at 926 (emphasis in original) (concluding that binding a non-signatory to the forum selection clause "is really applying a concept more akin to forfeiture or estoppel than waiver or implied consent."). Curitec's continued employment of Vaughn after receiving notice of the restrictive covenants in the Agreements is not a sufficient basis to infer Curitec's implied consent to personal jurisdiction under the forum selection clause. (D.I. 13, Ex. A at Ex. 2; D.I. 1-1 at ¶¶ 68-70)

Plaintiffs rely on two cases arising specifically in the context of an employer hiring the employee of a competitor in violation of a restrictive covenant. *See Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 645-47 (E.D. Pa. 2014); *Medtronic v. Endologix*, 530 F. Supp. 2d 1054, 1056-57 (D. Minn. 2008). As a preliminary matter, neither of these cases is binding on this court, and both are distinguishable from the facts of the instant case. In *Radian*, the new employer was aware of the employee's non-competition agreement during the employee's recruitment, reviewed a copy of the agreement, and recognized the risk of hiring a new employee

13

with a non-competition agreement after consulting with an attorney on the matter. *See Radian*, 18 F. Supp. 3d at 647. The *Radian* court determined that the new employer was "sufficiently closely related to [the employee] so as to foresee being bound by the forum selection clause" specifically because the new employer knew about the restrictive covenants throughout the hiring process and decided to hire the employee anyway. *Id.* Similarly, the defendant in *Medtronic* was aware of the employment agreements when it hired the employees, and it was therefore "closely related" to the dispute when those employees subsequently solicited the clients of their former employer on behalf of the defendant. *Medtronic*, 530 F. Supp. 2d at 1056-57.

In contrast, the record in this case shows that Curitec hired Vaughn without knowledge of the Agreements or the restrictive covenants therein until AMT sent notice letters. (D.I. 13, Ex. A at Ex. 2) Thus, Curitec could not have foreseen being bound by the forum selection clauses in the Agreements at the time it hired Vaughn. *Cf. Astro-Med v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 5-7 (1st Cir. 2009) (extending personal jurisdiction over defendant because it hired the employee despite prior awareness of, and legal advice regarding, employment agreement); *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 387 (D.N.J. 2016) (finding close relation based on foreseeability because the defendant was aware of the non-competition agreement while recruiting the employee). A non-signatory competitor's continued employment of an employee after the revelation of non-competition and forum selection clauses in the employee's prior employment agreement does not generally satisfy the "foreseeability" test. *See Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 933-34 (D. Minn. 2016) (declining to apply the closely related party doctrine to bind an out-of-state new employer to state court where it did not voluntarily join the contracting employee in any litigation); *Vinmar Overseas Singapore PTE Ltd. v. PTT Int'l Trading PTE Ltd.*, 538 S.W.3d 126, 138 (Tex. App. 2017) (refusing to bind new employer

to terms of employee's prior employment agreement where new employer did not voluntarily join employee in litigation over the employment agreement).

In sum, Curitec cannot be said to be "closely related" to the Agreements when it played no role in the negotiation of those Agreements and did not otherwise consent to relinquish its rights or abide by the Agreements' terms before hiring Vaughn. Plaintiffs have abandoned any argument that Curitec received a direct benefit from the Agreements, and foreseeability cannot serve as a standalone basis for personal jurisdiction under the "closely related" test. *See Finjan*, 2021 WL 5051147, at *9. Under these circumstances, I recommend that the court decline to apply the "closely related" doctrine to bind Curitec, an out-of-state new employer, to the Delaware forum selection clauses in Agreements to which it was not a party. *See Guaranteed Rate*, 264 F. Supp. 3d at 926 (citing *Medtronic, Inc. v. Ernst*, 182 F. Supp. 3d 925, 933-34 (D. Minn. 2016)). I further recommend that the court grant Curitec's motion to dismiss on this basis.

### 3. Regardless of whether Plaintiffs' tortious interference claim arises from Curitec's relationship to the Agreements, Curitec is not bound by the forum selection clause.

Finally, Plaintiffs allege that Curitec is bound by the forum selection clause because the tortious interference claim against Curitec arises out of the Agreements, and Curitec chose to assume the risk of hiring an executive who was subject to multiple restrictive covenants by her prior employer. (D.I. 13 at 12) But Curitec emphasizes that it was not aware of the Agreements until it received AMT's letter on February 11, 2022, after it hired Vaughn. (D.I. 16 at 9)

Having determined that Curitec should not be bound by the forum selection clause because the "closely related" test is not satisfied for the reasons set forth at § III.A.2, *supra*, the court need not reach the third step in the analysis. *See Ninespot, Inc. v. Jupai Holdings Ltd.*, C.A. No. 18-144-RGA, 2018 WL 3626325, at *4 (D. Del. July 30, 2018) (specifying that a party is bound by the forum selection clause only "[i]f each of the answers to the three-part test is

affirmative."); *ING Bank, FSB v. Palmer*, C.A. No. 09-897-SLR, 2010 WL 4038604, at *2 n.2 (D. Del. Sept. 29, 2010) (explaining that the court need not reach the third step in the analysis because the plaintiff failed the second step).[5]

### B. Severance and Transfer of Claims Against Curitec

In the event that the court finds no personal jurisdiction over Curitec in this district, Plaintiffs ask the court to sever their claims against Curitec and transfer them to the United States District Court for the Southern District of Texas as an alternative to outright dismissal of the claims. (D.I. 13 at 13) According to Plaintiffs, such a transfer would be appropriate because Curitec maintains its principal place of business in the Southern District of Texas. (*Id.*)

Curitec maintains that the cause of action against it should simply be dismissed for lack of personal jurisdiction. (D.I. 16 at 9) However, if the court is inclined to sever and transfer Plaintiffs' claim against Curitec, Curitec asks that it be transferred to the United States District Court for the Central District of California due to the parties' history of recent litigation in that district. (*Id.* at 9-10)

I recommend that the court deny Plaintiffs' request to sever and transfer its cause of action against Curitec. There is no consensus among the parties regarding the proposed transfer district, and the parties have not engaged in a complete transfer analysis regarding the merits of

---

[5] The parties' arguments on this factor are cursory. However, it seems that the third factor is satisfied on the facts of this case. "The 'standing' inquiry turns on whether the claims being asserted in the action arise from the agreement at issue." *River Valley Ingredients, LLC v. Am. Proteins, Inc.*, C.A. No. 19-2358-RGA, 2020 WL 2220148, at *5 (D. Del. May 7, 2020) (citing *Weygandt v. Weco, LLC*, 2009 WL 1351808, at *4 n.15 (Del. Ch. May 14, 2009)). Here, the Agreements containing the forum selection clauses are the same Agreements that give rise to Plaintiffs' substantive claim for tortious interference with contract against Curitec. Specifically, the complaint alleges that Curitec's employment of Vaughn caused Vaughn to breach the restrictive covenants in the Agreements. (D.I. 1-1 at ¶ 90)

16

each proposed forum. The court's recommendation to dismiss Curitec from this action is made without prejudice.

## IV. CONCLUSION

For the foregoing reasons, I recommend that the court GRANT without prejudice Curitec's motion to dismiss for lack of personal jurisdiction. (D.I. 9)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: May 6, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE