IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Gordian Medical, Inc., d/b/a American Medical Technologies, and AMT Ultimate Holdings, L.P., | ) ) ) ) | C/A No. 1:22-cv-00319-MN-SRF |
| Plaintiffs, | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT** |
| vs. | ) ) ) | **VAUGHN'S MOTION TO TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS FOR FAILURE TO** |
| Misty Vaughn, | ) ) | **STATE A CLAIM OR, IN THE SECOND ALTERNATIVE, FOR MORE** |
| Defendant. | ) ) | **DEFINITE STATEMENT** |
| _____ | ) | |

## I.  Introduction

Defendant, Misty Vaughn, by and through her undersigned counsel, hereby files this Memorandum of Law in Support of her Motion to Transfer Venue or, in the Alternative, to Dismiss for Failure to State a Claim or, in the Second Alternative, for More Definite Statement.  As set forth in detail below, Defendant Vaughn seeks to transfer the venue of this action to the District of South Carolina, pursuant to 28 U.S.C. § 1404(a), where her first-filed case is pending involving the same real parties in interest and the same employment agreement, Vaughn v. Gordian Medical, Inc. d/b/a American Medical Technologies, C/A No. 6:22-cv-00675-DCC (D.S.C.).

In the alternative, Defendant Vaughn seeks to have Plaintiffs' claims dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a plausible, viable claim for relief, because the restrictive covenants in her Employment Agreement with Plaintiff Gordian are unenforceable as a matter of law and because Plaintiffs' Complaint is based on nothing more than rank speculation and supposition. In addition, Plaintiff AMT Ultimate Holdings, L.P. is not a proper party Plaintiff in this action because it never employed Defendant Vaughn in any capacity and, therefore, has no legitimate

business interest in enforcing any restrictive covenants against Defendant Vaughn.

In the second alternative, Defendant Vaughn files a motion for more definite statement pursuant to Fed. R. Civ. P. 12(e), with respect to Plaintiffs' allegations that Defendant Vaughn has breached the restrictive covenants. Plaintiffs' Complaint, in which most substantive allegations are pleaded "upon information and belief," fails to identify with any specificity exactly what data or information was allegedly misappropriated or even what form the alleged information was in, what data or other information was not returned by Defendant to Plaintiff Gordian upon her departure from the company, or what specific vendors Defendant Vaughn has allegedly contacted following her departure from AMT. Furthermore, most of the information discussed in the Complaint, such as Defendant Vaughn's general experience, relationships, and knowledge is not protectable as confidential, proprietary, or trade-secret information of Plaintiff Gordian, but instead resides within Defendant Vaughn's head as common, industry knowledge.

## II.  Statement of the Case

Defendant Vaughn filed an action against her former employer, Gordian Medical, Inc. (Plaintiff in this action) in United States District Court for the District of South Carolina, Greenville Division, on March 3, 2022. (Vaughn v. Gordian Medical, Inc. d/b/a American Medical Technologies, C/A No. 6:22-cv-00675-DCC (D.S.C., Dkt. No. 1) (a copy of the South Carolina Complaint, with attachments, is attached hereto as Exhibit A). The Summons and Complaint in the South Carolina case were served on Gordian, as a foreign corporation doing business in South Carolina, but not registered to do so, through the South Carolina Secretary of State on March 7, 2022. Ms. Vaughn requested an expedited trial in the South Carolina case pursuant to Local Civil Rules 16.16-16.15, D.S.C. (Exhibit A, at 1, 9).

On Thursday, March 10, 2022, the undersigned received an email from Gordian's counsel forwarding a courtesy copy of a lawsuit it had filed against Ms. Vaughn Plaintiff and her new employer, Curitec, LLC, in the Delaware Court of Chancery on Friday, March 4, 2022, after the close of business for that week.  The e-filing stamp on the Delaware complaint indicates that it was filed at 6:16 p.m. EST on Friday, March 4, 2022.  Gordian's lawsuit against Ms. Vaughn in Delaware was apparently filed in a panic after the company learned that Ms. Vaughn had already sued it in the District of South Carolina.  Gordian did not seek an ex parte temporary restraining order in the Delaware case, but instead appeared to be more concerned with getting its complaint on file as soon as possible in an effort to minimize Ms. Vaughn's standing as first-to-file.  Defendants Vaughn and Curitec removed the Delaware action to the United States District Court for the District of Delaware on Friday, March 11, 2022, as soon as possible after her undersigned counsel first learned of the existence of the case in Delaware and was able to secure local counsel in Delaware.  Ms. Vaughn was not actually served with the summons and complaint in the Delaware case until Thursday, April 21, 2022, forty-eight (48) days after it was filed.

Ms. Vaughn's co-Defendant in the Delaware case, her new employer, Curitec, LLC, filed a motion to dismiss the claim against it for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), on March 23, 2022, which the Court granted on May 23, 2022 (Dkt. No. 24), after Gordian did not file an objection to Magistrate Judge Fallon's Report and Recommendation of May 6, 2022 (Dkt. No. 22).  (Dkt. No. 9).

### III.  Facts

This case, like the South Carolina case, arises out of Ms. Vaughn's former employment with Gordian, as Senior Vice President of Post Acute Operations and Clinical Services.  Ms. Vaughn

worked for Gordian out of her home in Greenville County, SC, at least for the past six or seven years. (Vaughn Decl., at 1-2, ¶¶ 3-4) (attached hereto as Exhibit B). In mid-2020, Gordian was sold to a private equity firm and later merged with another company called Restorix in mid-2021, which retained the executive leadership of Restorix. (Vaughn Decl., at 2, ¶ 6).

Although Ms. Vaughn had worked for Gordian for over twenty years, the Employment Agreement at issue in this litigation was signed on or about June 10, 2021, in connection with the Restorix merger. The 2021 Employment Agreement contains a mandatory forum selection clause specifying Delaware as the exclusive venue for any dispute arising under the Agreement, as well as a choice-of-law provision specifying that the Agreement would be governed by Delaware law. Plaintiff's employment with Gordian never had anything to do with the State of Delaware. (Vaughn Decl., at 2-3, ¶ 9). Gordian is not organized under Delaware law, nor does it maintains corporate offices in the State of Delaware. Plaintiff and her co-workers were told that if they did not sign the Employment Agreement as written, they would be terminated immediately. (Vaughn Decl., at 2, ¶ 7).

Ms. Vaughn resigned her employment with Gordian on or about January 12, 2022, after providing 30 days' notice of her resignation to the company approximately six months after signing the Agreement in question. (Vaughn Decl., at 1, ¶ 3); (S.C. Complaint, at 3, ¶ 14). In late January 2022, Ms. Vaughn started working for Curitec, which had been founded by one of her close friends and former co-workers at Gordian. (Vaughn Decl., at 3, ¶ 13). Curitec was formed under California law and maintains its principal place of business in the State of Texas.

On February 11, 2022, Ms. Vaughn received an email from an outside attorney for Gordian accusing her of violating various restrictive covenants in her Employment Agreement with Gordian,

4

including misappropriating trade secrets of Gordian's.  (Vaughn Decl., at 4, ¶ 15); (S.C. Complaint, at 3, ¶ 15).    The cease-and-desist letter demanded that Ms. Vaughn immediately resign her employment with Curitec and provide a signed Affirmation, under penalty of perjury, stating that she had resigned her employment with Curitec and that she would comply with all terms of her Employment Agreement.  Gordian's attorney also sent a copy of the February 11, 2022 letter to Plaintiff's current employer.  (S.C. Complaint, at 7, ¶¶ 26-28).

Ms. Vaughn filed the lawsuit in South Carolina for declaratory judgment as a direct result of Gordian's threats to interfere with her employment with Curitec.

## IV.  Discussion

### A.  Venue

Ms. Vaughn seeks to transfer venue of the Delaware case to South Carolina pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  This section is a codification of the forum non conveniens doctrine.  Although the United States Supreme Court has admittedly expressed a strong preference for enforcing valid forum selection clauses, Atlantic Marine Const. Co. v. United States District Court for W.D. Tex., 571 U.S. 49 (2013), there are several compelling reasons why the forum selection clause here alone does not mandate keeping the venue of this action in Delaware.

First of all, the Supreme Court's analysis in the Atlantic Marine case "presupposes a contractually valid forum-selection clause." 571 U.S. at 62, n.5.  The Atlantic Marine case involved sophisticated corporations that were providing work in the construction of a child-development

center for the U.S. Army Corp of Engineers in Texas.  Id. at 52-53.  The contract at issue between the prime contractor, which was headquartered in Virginia, and the sub-contractor, a Texas corporation, contained a forum selection clause specifying Norfolk, Virginia as the mandatory location of any dispute, even though the work was being performed in Texas.  The Court noted that "[t]he 'enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.'" Id. at 63 (emphasis added) (quoting Stewart Organization Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Here, by contrast, the forum selection clause was not "bargained for by the parties," but rather was forced down the throat of an individual who had no real bargaining power and who was presented with a take-it-or-leave-it contract of adhesion almost twenty years into her tenure of working for the same company.  (Vaughn Decl., at 2, ¶ 7).  This was clearly not a negotiated term between two equally sophisticated corporations, prior to the parties' contractual relationship, like that in Atlantic Marine.  The contractually selected forum here has absolutely nothing to do with Ms. Vaughn's employment or with the company's business.  The forum selection clause here is plainly an effort to create an asymmetric legal environment to prevent employees from resorting to the judicial system by making litigation so costly that no individual employee could realistically afford to bring suit against the company.

In M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1 (1972), the United States Supreme Court held that choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum;

(3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Here, Ms. Vaughn's Employment Agreement, which contains the forum selection clause at issue, is unreasonable because it meets all or nearly all of the <u>Breman</u> factors: the contract here was clearly a product of overreaching by her employer; the Delaware forum would present tremendous hardship to Ms. Vaughn, and the State of Delaware has absolutely no connection to Gordian or to Ms. Vaughn's employment with Gordian; the law of non-competes in Delaware is fundamentally more employer-friendly than is South Carolina law on non-competes; and South Carolina courts have recognized significant public policy concerns for South Carolina residents that would be contravened by applying Delaware law to this Agreement.

The South Carolina Supreme Court has plainly held that covenants not to compete and other restrictive covenants that contain a choice-of-law provision for another state's laws will not be enforced if such laws are contrary to the public policy of the State of South Carolina. <u>Stonard, Inc. v. Carolina Flooring Specialists, Inc.</u>, 621 S.E.2d 352, 353 (S.C. 2005). In other words, South Carolina courts will not uphold choice-of-law provisions that are contrary to South Carolina public policy. Furthermore, Section 15-7-120(A) of the South Carolina Code specifically allows a case to be brought in South Carolina notwithstanding a contractual provision that purports to require any claims under that contract to be brought in another state. S.C. Code Ann. § 15-7-120(A) ("Notwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action.").

The Employment Contract at issue here would not be valid under South Carolina law for several reasons. South Carolina law is well settled that an employment agreement containing a non-compete or other restrictive covenant is not enforceable unless the contract is supported by valuable consideration. Where an employee has already been working for an employer for a period of time, the employer must provide new consideration for the employment agreement to be binding; mere continued at-will employment is not sufficient consideration for such a contract. In <u>Poole v. Incentives Unlimited, Inc.</u>, 548 S.E.2d 207 (S.C. 2001), the South Carolina Supreme Court clearly held that "when a covenant is entered into after the inception of employment, separate consideration, in addition to continued at-will employment, is necessary in order for the covenant to be enforceable." <u>Id.</u> at 209. Here, Ms. Vaughn has alleged in her claim for declaratory judgment that she did not receive any valuable consideration in exchange for signing the new employment agreement in June 2021. (S.C. Complaint, at 5, ¶ 19(C)); (Vaughn Decl., at 2, ¶ 6). If Delaware law would allow the Employment Agreement to be upheld despite the absence of new consideration, that law would be contrary to South Carolina's public policy and South Carolina courts would not give effect to the Delaware choice-of-law provision that would detrimentally impact a South Carolina resident. <u>See</u> <u>Stonard</u>, 621 S.E.2d at 353.

The State of South Carolina has a significant interest in having this dispute adjudicated with the State of South Carolina. As noted above, South Carolina law is very protective of the rights of its own residents in employment cases where a contractual term is contrary to the public policy of this state. <u>See</u> <u>Stonard</u>, 621 S.E.2d at 353 (refusing to enforce a New Jersey choice of law provision in an employment contract because such provision was contrary to the public policy of South Carolina because New Jersey law allowed expansive blue-penciling of an overly broad non-

8

complete, whereas South Carolina strictly limits blue-penciling to merely striking through invalid terms).

The court should not automatically treat the forum selection clause as dispositive here, because it was a boiler-plate term in a contract of adhesion, mandated by one party with overwhelming contracting power over the other party.  If the case were retained in Delaware, Plaintiff would be  severely disadvantaged by an overreaching contract term.

If the forum selection clause in Defendant's Employment Agreement is not facially valid, the issue of whether to change venue is governed by the traditional <u>forum non conveniens</u> standard of 28 U.S.C. § 1404(a).  As the United States Supreme Court recognized in the landmark case of <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947), the first-to-file plaintiff has the right to select the forum for the dispute, and "unless the balance is <u>strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed</u>."  Id. at 508.

In the absence of a facially valid, contractual venue provision, the District of South Carolina is the proper venue for this case because Ms. Vaughn's first-filed complaint in the District of South Carolina would arise under the statutory and common law of South Carolina.  It is well established that where a particular state's laws apply under the <u>Erie</u> doctrine, either in a diversity case or a case involving pendent claims, there is substantial value in having those claims heard by a federal judge who is a resident of the same state and is more familiar with her home state's laws.  For example, in  <u>Gerber v. Canfield</u>, 315 F. Supp. 1175 (D.S.C. 1970), the court stated, "Certainly there is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."  <u>Id.</u> at 1178; <u>Wright v. American Flyers Airline Corp.</u>,

263 F. Supp. 865, 867-68 (D.S.C. 1967) (same holding); see also Bridgeman v. Bradshaw, 405 F. Supp. 1004, 1007 (D.S.C. 1975) ("[T]his is a North Carolina case, and should be tried in a North Carolina forum by a North Carolina judge familiar with North Carolina law.").

Ms. Vaughn's employment relationship with Gordian is governed by South Carolina law under the well-established choice-of-law principle of lex loci contractus, because the contractual employment relationship at issue was initially formed in South Carolina. Livingston v. Atlantic Coast Line R. Co., 180 S.E. 343, 345 (S.C. 1935) ("If the contract be silent [about the choice of law], the presumption is that the law governing the enforcement [of the contract] is the law of the place where the contract is made."). As the South Carolina Supreme Court has clearly held, "the place of contracting is . . . the place where the final act occurred which made a binding contract. Where acceptance is given by telephone, the place of contracting is where the acceptor speaks his acceptance." O'Briant v. Daniel Constr. Co., 305 S.E.2d 241, 243 (S.C. 1983) (emphasis added). Here, Ms. Vaughn was working for Gordian out of her home in Greenville County, South Carolina well before she signed the Employment Agreement at issue in June 2021. She signed the Employment Agreement electronically through DocuSign while she was living in South Carolina and was to continue to be employed by Defendant out of her home office in Greenville County. (Vaughn Decl., at 2, ¶ 8). In addition, Ms. Vaughn's performance under the employment contract occurred largely in South Carolina. Thus, under the principle recognized in O'Briant, Ms. Vaughn's employment relationship with Gordian is governed by South Carolina law. Again, Ms. Vaughn's employment with Gordian never had anything whatsoever to do with the State of Delaware. (Vaughn Decl., at 2-3, ¶ 9).

The convenience of the parties weighs strongly in favor of transferring the venue of this

action to the District of South Carolina.  As a leading treatise on federal practice indicates, a transfer of venue should be denied if its effect would merely be to shift inconvenience from one party to another.  15 Charles A. Wright et al., <u>Federal Practice & Procedure</u>, §3849.  In assessing the convenience of the parties, the court may consider the relative financial strength of the parties.  <u>Id.</u> Ms. Vaughn is an individual of relatively modest means.  By contrast, Gordian is a large, successful company with numerous employees.  Leaving this case in Delaware would involve considerable hardship on Ms. Vaughn, who would have to pay her chosen South Carolina counsel to litigate this case in Delaware with local counsel; she might have to travel to Delaware for depositions and for trial; and she might have considerable difficulty in securing the testimony of witnesses in Delaware, because no foreseeable witnesses live in or near Delaware. In contrast, transferring the case to South Carolina would involve minimal inconvenience to Gordian, which has substantially greater financial resources than does Ms. Vaughn and has already hired able employment counsel in South Carolina from a well-respected, nation-wide employment law firm.

Ms. Vaughn would also be greatly inconvenienced by retaining venue of this case in Delaware, because she has no present contact with Delaware.  She currently lives and works in Greenville County, South Carolina.  Delaware is not the location of any of Gordian's offices, nor is it the location of Ms. Vaughn's employment records, the location where any employment decisions regarding Ms. Vaughn were made, or the location where any potential witnesses in this case live or work.

With regard to the convenience of witnesses factor, as this Court has previously recognized, "The convenience of witnesses is not weighed from the standpoint of greater number of witnesses involved, but from consideration of the qualitative value of the testimony of particular witnesses."

11

Glickenhaus v. Lytton Fin. Corp., 205 F. Supp. 102, 106 (D. Del. 1962).  Ms. Vaughn and her former customers would be among the primary witnesses who can corroborate the fact that her job performance for Gordian was outstanding and who could corroborate the unlawful or unethical billing practices about which she complained, which ultimately led to her resignation from Gordian. None of those customers resides in Delaware.

For all of these reasons, the Court should not apply the presumption from the Atlantic Marine Construction case that the forum selection clause is conclusive.  Rather, the Court should analyze this case under the traditional forum non conveniens factors, which strongly favor transferring this case in South Carolina.

## B.  Alternative Rule 12(b)(6) Motion to Dismiss

In the alternative to seeking a transfer of venue of this case to the District of South Carolina, Defendant Vaughn files a motion to dismiss Plaintiffs' claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Within the past decade, the United States Supreme Court has revitalized Rule 12(b)(6) by abrogating the long-standing "no set of facts" standard of Conley v. Gibson, 355 U.S. 41 (1957).  Under the current standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  In Iqbal and Twombly, the Court reconciled Rule 8(a)(2)'s requirement that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief" with a defendant's right to

demand a sufficient level of detail from a plaintiff to ensure that the plaintiff's allegations state at least a plausible claim for relief.  The Supreme Court noted that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancements.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 555 U.S. at 555, 557).

Of course, on a Rule 12(b)(6) motion,  the court must "accept all well-pleaded allegations in the plaintiff's complaint as true and draw all reasonable factual inferences from those facts in the plaintiff's favor."  Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999).  With all due respect, even accepting the factual allegations in this case as true, Plaintiffs cannot meet the "plausibility" standard of Iqbal and Twombly.  Accordingly, Plaintiffs' Complaint should be dismissed in its entirety, or at least as to Plaintiff AMT Ultimate Holdings, L.P., which was never Ms. Vaughn's employer and, therefore, has no legitimate business interest in enforcing any restrictive covenant against her.

Plaintiffs' sole cause of action against Defendant Vaughn in this case is for breach of contract.  Plaintiffs have not brought a claim against her under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., or the Delaware Uniform Trade Secrets Act, 6 Del. Code § 2001 et seq. Although Plaintiffs' Complaint alleges that Ms. Vaughn generally had access to certain information during her employment with Gordian, Ms. Vaughn worked for Gordian for almost 20 years before she signed the Employment Agreement at issue in this case.  Gordian has no proprietary interest or ability to protect information that Ms. Vaughn has learned through her decades of experience in this industry or the personal or professional relationships she has developed during her employment with

Gordian.

Delaware law is well-established that "[c]ovenants not to compete when contained in employment agreements are not mechanically enforced." McCann Surveyors, Inc. v. Evans, 611 A.2d 1, 3 (Del. Ch. 1987). As the court of chancery recognized in Faw, Casson & Co. v. Cranston, 375 A.2d 463 (Del. Ch. 1977), " agreements not to compete must be closely scrutinized as restrictive of trade." Id. at 466. Covenants not to compete in the employment context are subjected to greater scrutiny than those in connection with the sale of a business. Id. at 465. In Kellam Energy, Inc. v. Duncan, 668 F. Supp. 861 (D. Del. 1987), this Court stated, "Delaware courts rarely recognize covenants not to compete." Id. at 876. The Kellam court specifically noted that non-competes are disfavored in the law because their "effect 'is to create a limited geographic monopoly.'" Id.

As this Court has previously held, "[u]nder Delaware law, restrictive covenants, like a non-compete agreement, must be 'reasonable in scope and duration,' 'advance a legitimate economic interest' of the former employer, and 'survive a balance of the equities.'" MirTech Inc. v. AgroFresh Inc., 561 F. Supp. 3d 447, 454 n.3 (D. Del. 2021) (quoting Weichert Co. v. Young, 2007 WL 4372823, at *3 (Del. Ch. Dec. 7, 2007)). Similarly, in Mattern & Assocs., L.L.C. v. Seidel, 678 F. Supp. 2d 256 (D. Del. 2010), this Court recognized that "A non-competition agreement must . . . bear a reasonable relationship 'to the protection of a legitimate business interest. Generally, American courts insist that an employer may not enforce a post-employment restriction on a former employee simply to eliminate competition per se; the employer must establish a legitimate business interest to be protected.' The employer's legitimate business interest must, upon balance, both outweigh the employee's interest in practicing a chosen profession and accord with the interest of the public. Id. at 267 (quoting Hess v. Gebhard & Co., 808 A.2d 912, 918, 920 (Pa. 2002)).

14

Here, the geographic scope of the non-compete literally could not be much broader.  It purports to prevent Ms. Vaughn from performing certain work for any subsequent employer "within (A) the United States or (B) any other country in which" Plaintiff Gordian conducts certain types of business.  (Employment Agreement, at 9, ¶ 9(b)).

Furthermore, the type of business that Ms. Vaughn is purportedly prevented from engaging in after her departure from Gordian is incredibly over-broad and is not limited to the type of work she performed while she worked for Gordian.  In other words, the non-compete is not specifically aimed at preventing Ms. Vaughn from performing the same job or class of jobs for a new employer as she did for Goridan.  Under the express terms of the Employment Agreement, Ms. Vaughn would be prevented from "be[ing] employed by . . . or render[ing] services to any person, firm, corporation or other entity, in whatever form, engaged in the business of providing wound care supplies or related wound care evaluation, treatment and management services, ostomy, urological or tracheostomy services and training and education in any setting, whether in a facility, a clinic, in home-based care or otherwise."  (Employment Agreement, at 9, ¶ 9(b)).  Under the express terms of this Paragraph, Ms. Vaughn could not even work as a paramedic for a county EMS Department, because she would be "engaged in the business of providing . . . related wound care evaluation [and] treatment," which would fall within the proscriptions of the Agreement.  Plaintiff cannot establish any legitimate business interest in preventing Ms. Vaughn from participating in such a broad category of work for 24 months following her employment with Gordian.

In addition, the Employment Agreement purports to define "Confidential Information" so broadly that it would encompass almost anything Ms. Vaughn learned during her twenty-plus years of employment with Gordian, including "all data, information, ideas, concepts discoveries, . . .

innovations, improvements, know-how, developments, techniques, methods, processes [or] treatments." (Employment Agreement at 8, ¶ 9(a)). By defining "Confidential Information" so broadly, the Employment Agreement becomes a de facto non-compete agreement, without any time limit or geographical limitation whatsoever, much less reasonable restrictions consistent with any legitimate business interest of Plaintiffs.

Next, most of the allegations that Ms. Vaughn has misappropriated or retained certain unspecified confidential, proprietary, or trade secret information of Plaintiffs' are made "upon information and belief." Nor have Plaintiffs identified a single customer or related business whom Ms. Vaughn has allegedly contacted or solicited following her employment with Gordian. For example, Paragraph 67 of the Complaint merely states, "Upon information and belief, Vaughn has contacted AMT's vendors." (Complaint, at 16, ¶ 67). Plaintiffs' Complaint is simply devoid of any substantive allegations necessary to create a plausible claim to relief under the Iqbal/Twombly line of cases.

Finally, Plaintiff AMT Ultimate Holdings, L.P. is not a proper party in interest in this case because it never employed Ms. Vaughn in any capacity and, therefore, would have no legitimate business interest in preventing her from working anywhere after her departure from Gordian. The sole averment in the Complaint relating to AMT Holdings is the five-word sentence in Paragraph 7: "[AMT] Holdings is [Gordian's] indirect parent." (Complaint, at 2, ¶ 7). Plaintiffs to not describe whether AMT Holdings has any employees or conducts any business whatsoever, other than being a shell holding company for the private equity firms that purchased Gordian in 2020. Oddly, Plaintiffs did not even attach a copy of Ms. Vaughn's Incentive Unit Grant Agreement with AMT Holdings to the Complaint in this case. Because Plaintiff AMT Holdings has no legitimate business

16

interest in preventing Ms. Vaughn from working anywhere in the future, it cannot seek to enforce the purported restrictive covenants in the Incentive Unit Grant Agreement should be dismissed as a Plaintiff.

For these reasons, the Court should invalidate the restrictive covenant portions of the Employment Agreement as unenforceable, which would render Plaintiffs' Complaint for breach of the contract a nullity and subject to dismissal for failure to state a claim.

### C.  Second Alternative Motion for More Definite Statement

As a second alternative motion, Defendant Vaughn has requested the Court, pursuant to Fed. R. Civ. P. 12(e) to order Plaintiffs to make more definite the allegations in the Complaint about exactly what Ms. Vaughn has done to violate the restrictive covenants in her Employment Agreement.  Rule 12(e) of the Federal Rules of Civil Procedures provides as follows: "A party may move for more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). In Thomas v. Independence Twp., 463 F.3d 285 (3d Cir. 2006), the Third Circuit Court of Appeals stated, "The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief." Id. at 301.

Here, Plaintiffs' Complaint contains nothing but vague and generalized, conclusory allegations that Ms. Vaughn has misappropriated confidential, proprietary, or trade secret information, without disclosing specifically what that information is or what format it is in, and that she has failed to return unspecified confidential, trade secret or proprietary information of Gordian's upon her departure from the company's employment.  As the Third Circuit Court of Appeals has

recognized, "'care must [still] be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be.'" Mallet & Co. Inc. v. Lacayo, 16 F.4th 364, 384 (3d Cir. 2021) (quoting Oakwood Labs. LLC v. Thanoo, 999 F.3d 892, 907 (3rd Cir. 2021)). The Lacayo court also stated that "an employee's general know-how does not constitute trade secret information." Id. at 386.

Similarly, Plaintiffs have failed to identify any specific customers or other business contacts with whom Defendant Vaughn has allegedly solicited otherwise impacted Plaintiffs' business relationships. As noted previously, the Complaint in this case states, "Upon information and belief, Vaughn has contacted [Gordian's] vendors." (Complaint, at 16, ¶ 67). Such vague and conclusory allegations are not sufficient to enable Defendant Vaughn to respond to these serious allegations.

## V.  Conclusion

For all of the foregoing reasons, Defendant Vaughn respectfully requests that the Court transfer this case to the District of South Carolina to be joined with her first-filed lawsuit currently pending there. In the alternative, Defendant Vaughn requests the Court to dismiss Plaintiff's Complaint against her for failure to state a claim for relief under Rule 12(b)(6), or at least to dismiss Plaintiff AMT Ultimate Holdings, L.P. as a party Plaintiff. In the second alternative, Defendant Vaughn requests that the Court order Plaintiffs to file an Amended Complaint making more definite the specific allegations of wrongdoing by Defendant Vaughn, including identifying specific confidential, proprietary, or trade-secret information that she is alleged to have wrongfully misappropriated or retained and any specific customer or vendor of Plaintiff's that Defendant Vaughn has contacted inappropriately.

*      *      *

18

Respectfully submitted,


  s/ Daniel C. Herr
Daniel C. Herr (No. 5497)
Law Office of Daniel C. Herr, LLC
1225 North King St., Suite 1000
Wilmington, DE 19801
(302) 483-7060 (Office)
(302) 483-7065 (Facsimile)
dherr@dherrlaw.com

David E. Rothstein
(Admitted *Pro Hac Vice*)
ROTHSTEIN LAW FIRM, PA
1312 Augusta Street
Greenville, South Carolina 29605
(864) 232-5870 (Office)
(864) 241-1386 (Facsimile)
drothstein@rothsteinlawfirm.com

Attorneys for Defendant Misty Vaughn

June 2, 2022

Wilmington, Delaware.

19