IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GORDIAN MEDICAL, INC. d/b/a<br>AMERICAN MEDICAL TECHNOLOGIES and<br>AMT ULTIMATE HOLDINGS, L.P.,<br><br>    Plaintiffs,<br><br>  v.<br><br>MISTY VAUGHN,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 22-319-MN-SRF<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

Presently before the court in this diversity action for breach of an employment contract and tortious interference with contract are the following motions: (1) defendant Misty Vaughn's ("Vaughn") motion to transfer venue under 28 U.S.C. § 1404(a) or, alternatively, to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, to compel a more definite statement under Fed. R. Civ. P. 12(e), (D.I. 25); (2) Vaughn's motion for leave to file documents in further support of the motion to transfer venue, (D.I. 38); and (3) the cross-motion to strike all portions of Vaughn's reply brief asserting new arguments filed by plaintiffs Gordian Medical, Inc., d/b/a American Medical Technologies ("AMT") and AMT Ultimate Holdings, L.P. ("Holdings;" collectively, "Plaintiffs") (D.I. 40).[1] For the following reasons, I recommend that the court DENY Vaughn's motion to transfer and dismiss. (D.I. 25) Vaughn's motion to compel a more definite statement is DENIED pursuant to Rule 72(a). (D.I. 25) Vaughn's motion to supplement the record is DENIED. (D.I. 38) Plaintiffs' cross-motion to strike is DENIED as moot. (D.I. 40)

---

[1] The briefing and related filings associated with the pending motions are found at D.I. 26, D.I. 30, D.I. 32, D.I. 38, and D.I. 40.

I. **BACKGROUND**

Plaintiffs initiated this civil action for breach of an employment contract and tortious interference with contract on March 4, 2022, in the Delaware Court of Chancery. (D.I. 1-1) On March 11, 2022, Vaughn and Curitec, LLC ("Curitec") removed the action to this court, which has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (D.I. 1 at ¶¶ 3, 5) Curitec was dismissed from the action for lack of personal jurisdiction on May 23, 2022. (D.I. 24)

Vaughn was formerly employed as Senior Vice President of Post-Acute Operations and Clinical Services at AMT, where she worked from her home in South Carolina. (*Id.* at ¶ 6; D.I. 26, Ex. B at ¶ 4) In mid-2020, AMT was sold to private equity firms which required AMT employees to sign new employment contracts. (D.I. 26, Ex. B at ¶ 5) AMT merged with Restorix Health the following year, and AMT employees were again required to sign new employment contracts. (*Id.* at ¶ 6) Among other things, the Employment Agreement ("Agreement") executed by Vaughn on June 10, 2021, prohibits Vaughn from joining a competitor or soliciting AMT's customers and employees during a twenty-four-month period following the termination of her employment with ATM. (D.I. 1-1 at ¶¶ 32, 37, 38; Ex. A at § 9(b)-(c))

On July 31, 2021, Vaughn executed an agreement with Holdings containing nearly identical restrictive covenants (the "Equity Agreement;" together with the Agreement, the "Agreements"). (D.I. 1-1 at ¶¶ 43-52) Both the Agreement and the Equity Agreement contain forum selection clauses and choice of law provisions in which the parties consented to the exclusive jurisdiction of courts located in Delaware:

> This Agreement, the rights and obligations of the parties hereto, and all claims or causes of action (whether at law or in equity, in contract, in equity, in statute, in tort or otherwise) that may be based upon, arise out of or relate to this Agreement or the Executive's employment by the Company or any member of the Company

2

>Group, or the negotiation, execution or performance thereof, or the transactions contemplated hereby (any such claim or cause of action, a "Claim"), shall be governed by and construed solely and exclusively in accordance with the internal laws of the State of Delaware, including its statutes of limitations, but without regard to the choice of law provisions thereof. Each of the parties agrees that any dispute between the parties shall be resolved solely and exclusively in the courts of the State of Delaware or the United States District Court for the District of Delaware and the appellate courts having jurisdiction of appeals in such courts (the foregoing courts, collectively, the "Chosen Courts"). In that context, and without limiting the generality of the foregoing, each of the parties hereto irrevocably and unconditionally (a) submits in connection with any proceeding relating to any Claim to the sole and exclusive jurisdiction of the Chosen Courts, and agrees that all Claims shall be heard and determined solely and exclusively in the Chosen Courts; (b) consents that any such Claim may and shall be brought solely and exclusively in the Chosen Courts and waives any objection that the Executive or the Company may now or thereafter have to the venue or jurisdiction of any such Claim in any such Chosen Court or that such Claim was brought in an inconvenient court and agrees not to plead or claim the same; (c) WAIVES ALL RIGHT TO TRIAL BY JURY IN CONNECTION WITH ANY CLAIM; (d) agrees that service of process in connection with any such Claim may be effected by delivering a copy of such process to such party as provided in Section 14 hereof; and (e) agrees that nothing in this Agreement shall affect the right to effect service of process in any other manner permitted by the laws of the State of Delaware. Each party shall pay all of its own costs and expenses, including, without limitation, its own legal fees and expenses.

(*Id.* at ¶¶ 41, 51; Ex. A at § 18)

Plaintiffs' remaining cause of action for breach of contract arises out of Vaughn's alleged breaches of the non-compete and confidentiality provisions in the Agreements.[2] (D.I. 1-1) The complaint alleges that Vaughn resigned from her employment with AMT on January 12, 2022. (*Id.* at ¶ 60) On February 7, 2022, Vaughn confirmed that she had immediately taken a position at Curitec, one of AMT's biggest competitors. (*Id.* at ¶¶ 61, 66) The following week, Plaintiffs sent separate cease-and-desist letters to Vaughn and Curitec informing them that their employment relationship violated the restrictive covenants in the Agreements. (*Id.* at 5, Ex. A at

---

[2] Count I of the complaint sets forth a cause of action for breach of contract against Vaughn. (D.I. 1-1 at ¶¶ 76-84) Count II sets forth a cause of action for tortious interference with contract against Curitec, LLC. (*Id.* at ¶¶ 85-94) Curitec, LLC was dismissed from the action on May 23, 2022. (D.I. 24)

3

Exs. 1-2) On March 3, 2022, one day before Plaintiffs brought the present action, Vaughn filed a lawsuit in the United States District Court for the District of South Carolina challenging the validity of the Agreement. (D.I. 26, Ex. A)

## II. DISCUSSION

### A. Motion to Transfer Venue

#### 1. Legal standard.

Section 1404(a) codifies the doctrine of *forum non conveniens* for cases within the federal court system, giving district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a); *see Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013); *Jumara v. State Farm Ins.*, 55 F.3d 873, 878 (3d Cir. 1995). The standard transfer analysis in the Third Circuit involves consideration of several non-exclusive public and private interest factors which are set forth in *Jumara*. 55 F.3d at 879-80.

When a valid forum selection clause applies to a dispute, the court does not consider the private interest factors because they are deemed "to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64; *see In re McGraw-Hill Global Education Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). A forum selection clause is considered "a manifestation of the parties' preferences as to a convenient forum." *Jumara*, 55 F.3d at 880; *Atl. Marine*, 571 U.S. at 59. Accordingly, the court will contravene a valid forum selection clause "[o]nly under extraordinary circumstances unrelated to the convenience of the parties[.]" *Atl. Marine*, 571 U.S. at 62.

The public interest considerations under *Jumara* include (1) the enforceability of the judgment; (2) practical considerations that could make trial easy, expeditious, or inexpensive; (3)

the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80. These factors "will rarely defeat a transfer motion" when a valid forum selection clause applies. *Atl. Marine*, 571 U.S. at 64. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.* The party seeking to litigate in a forum other than the one contractually selected by the parties bears the burden to show that the public interest factors overwhelmingly weigh in favor of transfer. *Id.* at 67.

### 2. The Agreement's forum selection clause is valid.

The Third Circuit, applying Supreme Court precedent, has explained that "a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser*, 490 U.S. 495 (1989) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-11 (1972)). Vaughn challenges the validity of the Agreement's forum selection clause under each of these three factors. (D.I. 26 at 5-12)

First, Vaughn alleges that the forum selection clause in the Agreement was the result of overreaching because she lacked bargaining power in the negotiations and was forced to choose between signing the Agreement or losing her employment. (D.I. 26 at 6; Ex. B at ¶ 7) She describes the Agreement as "a take-it-or-leave-it contract of adhesion" drafted with the intention

5

of depriving employees of the ability to pursue litigation. (*Id.*) But "[i]nvalidating a forum selection clause for overreaching requires proof of one party's unfair exploitation of its overwhelming bargaining power or influence over the other party." *Pride Enters., Inc. v. Lewes Steel Serv.*, C.A. No. 09-330-GMS, 2010 WL 1337683, at *3 (D. Del. Mar. 31, 2010) (internal citations and quotation marks omitted). "[A] mere showing of inequality between the two parties will not do." *Id.*

Vaughn cites no authority to support her position that conditioning continued employment on the execution of an employment agreement amounts to overreach, and the case law cited by Plaintiffs refutes Vaughn's position. In *Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, the court explained that "while it may have been 'mandatory' that [the employee] sign the agreement to continue working for [the employer], there is no evidence that he was pressured into doing so." 2017 WL 417193, at *6 (C.D. Cal. Jan. 31, 2017). The court noted that the employee "could simply have opted to find a new job, as he did a year later." *Id.* Vaughn suggests that her employability was diminished as a person "over forty, highly compensated, and has been working at the same place for two decades," rendering the facts of *Mechanix Wear* distinguishable. (D.I. 32 at 7) But the core, undisputed facts of this case contradict Vaughn's position. Vaughn began working for a competitor only weeks after leaving AMT and less than a year after executing the Agreement, establishing that any alleged barriers to her employability due to her age or compensation level are unsupported. (D.I. 1-1 at ¶ 61; D.I. 26 at 4)

Moreover, the record before the court does not support a finding that the Agreement was obtained through Plaintiffs' overreach or undue pressure. Instead, the evidence supports a conclusion that Vaughn and her counsel were given adequate time to review the Agreement and

propose modifications to its terms. (D.I. 30, Ex. A at Ex. 1) Vaughn relies only on her self-serving, uncorroborated declaration. (D.I. 26, Ex. B) Vaughn's allegation that she was "given only 24 hours to sign the agreements or be fired" is contradicted by contemporaneous email correspondence confirming that AMT gave Vaughn a soft deadline of one week to finalize the Agreement and she executed it three days after receiving it. (*Compare* D.I. 26, Ex. B at ¶ 7 *with* D.I. 30, Ex. A at ¶ 6 & Ex. 1 at 2) Vaughn's assertion that Plaintiffs unfairly exploited their overwhelming bargaining power is further undercut by the fact that Vaughn was represented by counsel from Nixon Peabody when she executed the Agreement, and Vaughn herself requested a change to a term in the Agreement which was promptly made by AMT. (D.I. 30, Ex. A at ¶¶ 3-5 & Ex. 1 at 1); *see Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, 2017 WL 417193, at *6 (C.D. Cal. Jan. 31, 2017) (finding no overreach where employee had sufficient time and opportunity to consult an attorney before signing agreement).

Vaughn next contends that enforcement of the forum selection clause in Delaware would violate South Carolina's public policy against enforcing restrictive covenants and choice-of-law provisions which are inconsistent with South Carolina law. (D.I. 26 at 7-8) But Vaughn's reliance on South Carolina public policy considerations is misplaced. "When deciding whether or not to enforce a forum selection clause because of public policy considerations . . . the court 'considers whether enforcement would contravene a strong public policy *of the forum in which the suit was brought*, not in a forum in which the suit could have been brought.'" *Whirlpool Corp. v. Cabri*, C.A. No. 21-979-EJW, 2022 WL 1421126, at *9 (D. Del. May 5, 2022) (quoting *HOPCo Intermediate Holdings, Inc. v. Jones*, C.A. No. 20-627-LPS-JLH, 2020 WL 6196293, at *1 (D. Del. Oct. 22, 2020)); *see M/S Bremen*, 407 U.S. at 15 (holding forum selection clauses "should be held unenforceable if enforcement would contravene a strong public policy of the

forum in which suit is brought."). Vaughn does not address public policy considerations under Delaware law. Consequently, Vaughn has not met her burden to show that enforcement of the forum selection clause would violate a strong public policy of Delaware. *See QVC, Inc. v. Your Vitamins, Inc.*, 753 F. Supp. 2d 428, 432 (D. Del. 2010) (holding that forum selection clause controlled where no cognizable public policy violation was clearly articulated).

Finally, Vaughn alleges that enforcement of the forum selection clause would be unreasonable because the first-to-file doctrine requires the litigation to proceed in South Carolina. (D.I. 26 at 9-12) However, a forum selection clause may provide an exception to the first-to-file doctrine. *See Samuel T. Freeman & Co. v. Hiam*, 2012 WL 2120474, at *7 (E.D. Pa. June 11, 2012) ("The presence of a valid forum selection clause may serve as an 'extraordinary circumstance' that would justify a departure from the first-filed rule."); *see also Chemetall US Inc. v. Laflamme*, 2016 WL 1162751, at *3 (D.N.J. Mar. 24, 2016); *DePuy Synthes Sales, Inc. v. Edwards*, 23 F. Supp. 3d 472, 477-78 (E.D. Pa. 2014). Vaughn's argument that the traditional *forum non conveniens* factors weigh in favor of transfer falls short of the high bar to show that "trial in the contractual forum will be so gravely difficult and inconvenient that [s]he will for all practical purposes be deprived of [her] day in court." *M/S Breman*, 407 U.S. at 18. The concerns expressed by Vaughn align with the private interest factors and are not considered where, as here, the parties have agreed to a forum selection clause. *See Atl. Marine*, 571 U.S. at 64.

Vaughn also suggests that AMT is precluded from filing a lawsuit in Delaware because it is not registered to conduct business with the State of Delaware. (D.I. 32 at 2-3) Vaughn raised this argument for the first time in her reply brief and the court therefore need not consider it. *See Cohen v. Cohen*, C.A. No. 19-1219-MN, 2022 WL 952842, at *4 (D. Del. Mar. 30, 2022) ("A

8

reply brief . . . is not the appropriate time to raise a new argument."). Vaughn has since acknowledged that AMT is certified to conduct business in Delaware. (D.I. 38, Ex. C)

### 3. The public interest factors weigh in favor of enforcing the forum selection clause.

Having determined that the forum selection clause is valid, the court next turns to consideration of the public interest factors in accordance with *Atlantic Marine*. "Because [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Montrose Env't Grp., Inc. v. Yeddula*, C.A. No. 20-834-RGA-SRF, 2020 WL 4335522, at *4 (D. Del. July 28, 2020) (quoting *Atl. Marine*, 571 U.S. at 64). Vaughn does not clearly delineate any of the public interest factors in support of her motion to transfer. (D.I. 32 at 8) ("Plaintiffs' discussion of the public interest factors presumes a valid forum-selection clause, which is why Defendant Vaughn did not spend much time in her opening brief discussing those factors."). Nonetheless, her arguments may be construed to address two of the public interest factors: practical considerations that could make trial easy, expeditious, or inexpensive; and the local interest in resolving local controversies at home. (D.I. 26 at 8, 10-12)

As to the practical considerations, Vaughn cites the expense of paying lead and local counsel, the difficulty of traveling from South Carolina to Delaware, and the location of books, records, and witnesses outside of Delaware. (D.I. 26 at 11-12) None of these factors supersedes the forum selection clause. Vaughn's complaints about the hardship of paying lead and local counsel are in tension with her subsequent suggestion that her executive-level salary would be a deterrent to prospective employers. (*Compare* D.I. 26 at 11 *with* D.I. 32 at 7) Similarly, Vaughn's focus on the alleged difficulty of traveling from South Carolina to Delaware for depositions and trial is belied by her notice of resignation, which recites her desire to "pursue her

9

passion for travel" among her reasons for resigning from AMT. (D.I. 1-1 at ¶ 60) The location of books, records, and witnesses outside of Delaware overlaps with the private interest factors and is generally considered relevant only to the extent that they would be unavailable in Delaware. *See P Tech, LLC v. Arthrex, Inc.*, C.A. No. 21-968-MN, 2022 WL 1490733, at *4-5 (D. Del. May 11, 2022). Vaughn has made no such showing here.

With respect to the local interest in resolving local controversies, Vaughn suggests that the Agreement is governed by South Carolina law because the contract was formed there. (D.I. 26 at 10) The authority Vaughn cites in support of this argument specifies that this principle applies only if the contract is silent about which law governs the contract—it does not apply where, as here, the Agreement contains a forum selection clause. *See Livingston v. Atl. Coast Line R. Co.*, 180 S.E. 343, 345 (S.C. 1935). Vaughn also argues that the Agreement is not enforceable under South Carolina law because she did not receive any valuable consideration for signing it. (D.I. 26 at 8) But Vaughn does not deny that she received a $1.2 million accelerated "success fee" payment in 2021 in connection with her execution of the Agreement. (D.I. 30, Ex. A at ¶ 9 & Ex. 4) Vaughn also received consideration in the form of incentive equity units awarded pursuant to an Incentive Unit Grant Agreement. (D.I. 30 at 12; Ex. A at ¶ 8 & Ex. 3) The fact that the incentive units did not vest prior to Vaughn's departure does not alter the fact that Vaughn was granted a benefit of actual value. *See Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *9 (Del. Ch. Mar. 27, 2014) (concluding that unvested equity units were not illusory consideration because they had actual value, and they incentivized the employee to remain with the company). The contingent value of the incentive units does not render the consideration illusory. *Id.*

In her reply brief, Vaughn indicates that the respective civil case loads in the District of South Carolina and the District of Delaware weigh in favor of transferring this case. (D.I. 32 at 8) Vaughn represents that "the District of Delaware . . . has 4 active District Judges, 1 Senior-status District Judge, and 4 Magistrate Judges." (*Id.*) The court will not consider Vaughn's arguments on this point. Vaughn filed her reply brief on July 7, 2022, when the District of Delaware had no Senior District Judges, three active District Judges, and four Magistrate Judges. Vaughn's inaccurate representations indicate that she did not take the time to review the number of Judges on the court's website or the case filing statistics discussed in the court's Annual Report, which is also published on the court's website.

Vaughn has not met her burden to show that any unusual circumstances exist that would override application of the forum selection clause. *See Atl. Marine*, 571 U.S. at 67 (explaining that the party seeking to litigate in a forum other than the one contractually selected by the parties bears the burden to show that the public interest factors overwhelmingly weigh in favor of transfer). Consequently, I recommend that the court deny Vaughn's motion to transfer venue under § 1404(a).

### 4. Vaughn's proposed supplementation of the record does not alter the transfer of venue analysis under 28 U.S.C. § 1404(a).

Vaughn moves to supplement the record to introduce Plaintiffs' discovery responses and records from the Delaware Department of State allegedly showing that Plaintiffs lack the requisite contacts with the State of Delaware. (D.I. 38, Exs. A-C) The court has discretion to permit supplementation of the record upon consideration of: (1) "the timing of the motion and the moving party's explanation for failing to introduce the evidence earlier;" (2) "whether the evidence sought to be introduced is especially important or probative;" and (3) "whether reopening will cause undue prejudice to the nonmoving party." *FEC v. O'Donnell*, C.A. No. 15-

17-LPS, 2017 WL 2200911, at *2 (D. Del. May 19, 2017) (quoting *In re Chemed Corp.*, 2017 WL 1712530, at *5 & n.5 (D. Del. Apr. 25, 2017)). Vaughn's motion to supplement the record is denied because she has failed to establish the relevance or probative value of the supplemental evidence under the second factor of this analysis.[3] Vaughn has not demonstrated how this information is relevant to the public interest factors of the transfer analysis. To the extent that evidence regarding the location of witnesses and records may be relevant to certain private interest factors under the § 1404(a) venue analysis, consideration of those factors is waived due to the applicability of the forum selection clause for the reasons set forth at § II.A.2, *supra*. *See Atl. Marine*, 571 U.S. at 64. Consequently, supplemental evidence regarding the extent and nature of Plaintiffs' contacts with Delaware does not advance Vaughn's challenge to venue.

### B. Motion to Dismiss

#### 1. Legal standard.

When a complaint is challenged by a Rule 12(b)(6) motion to dismiss, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A claim is facially plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

---

[3] Vaughn's motion for leave to supplement the record is non-dispositive under 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a). *See Morrison v. Perry Sch. Dep't*, 2018 WL 6819313, at *5 (D. Me. Dec. 28, 2018). Objections to this portion of the ruling are therefore considered under the clearly erroneous or contrary to law standard of review.

678. The court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### 2. Analysis.

Vaughn contends that dismissal is warranted because the scope of the Agreement's restrictive covenant is unreasonably broad in its geographical reach, the type of restricted business, and the definition of "confidential information." (D.I. 26 at 15-16) However, the Third Circuit has declined to adopt a per se rule against such broad restrictions based on the principle that reasonableness is a fact-intensive inquiry. *See Victaulic Co. v. Tieman*, 499 F.3d 227, 234-35, 237-38 (3d Cir. 2007). The court's analysis is therefore limited to a determination of the facial plausibility of "reasonableness" as pleaded, and the court will not resolve factual disputes or make a recommendation on the merits of the claims at this stage of the case. Under this standard, Vaughn has not met her burden to establish that the complaint fails to plead the unreasonableness of the restrictive covenant's scope. *See Powervar, Inc. v. Power Quality Scis.,*

*Inc.*, 2021 WL 2986417, at *4 (E.D. Pa. July 15, 2021) ("The party challenging the geographic restriction bears the burden of demonstrating unreasonableness.").

Viewing the allegations in the light most favorable to Plaintiffs, the court finds that the scope of the restrictive covenant is consistent with the scope of Vaughn's duties. *Victaulic*, 499 F.3d at 237-38; *see also Bus Air, LLC v. Woods*, C.A. No. 19-1435-RGA-CJB, 2019 WL 6329046, at *8 n.6 (D. Del. Nov. 26, 2019) (declining to find that the geographic scope of a restrictive covenant extending to "anywhere in North America" was unreasonable on a motion to dismiss) (citing *O'Leary v. Telecom Res. Serv., LLC*, 2011 WL 379300, at *5 (Del. Super. Ct. Jan. 14, 2011)). The complaint plausibly alleges that, as a senior executive, Vaughn's duties extended broadly across AMT's national business operations. (D.I. 1-1 at ¶¶ 4-6); *see W.L. Gore & Assocs., Inc. v. Wu*, 2006 WL 2692584, at *14 (Del. Ch. Sept. 15, 2006) (concluding that former employee had extensive knowledge which "would almost certainly filter into his work" for a competitor and result in disclosure of proprietary information); *UtiliSave, LLC v. Miele*, 2015 WL 5458960, at *9 (Del. Ch. Sept. 17, 2015) (declining to resolve on a motion to dismiss fact-intensive inquiries regarding the scope of an injunction to protect proprietary information). Consequently, the restrictive covenant's limitations on Vaughn's ability to work for any subsequent employer engaged in a competing business within a broad geographical range are not facially unreasonable. (D.I. 26, Ex. A at Ex. A at ¶ 9(b)); *see O'Leary*, 2011 WL 379300, at *5 ("A national scope can be particularly necessary in today's world where so many businesses operate on a national or even global scale.").

According to Vaughn, pleaded allegations based only on "information and belief" that she misappropriated proprietary information are not sufficient to state a plausible claim absent assertions that Vaughn actually contacted a customer or business associated with Plaintiffs. (D.I.

14

26 at 16) But the Third Circuit has expressly held that allegations made on information and belief are permissible where, as here, "the requisite factual information is peculiarly within the defendant's knowledge or control[.]" *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). Information regarding Vaughn's contacts during her employment with Curitec is exclusively within the possession of Vaughn and Curitec.

Finally, Vaughn argues that Holdings should be dismissed because it never employed Vaughn and therefore has no business interest in enforcing the Agreements' restrictive covenants. (D.I. 26 at 16-17) This argument also fails because the complaint plausibly alleges that Holdings has an interest in Vaughn's compliance with the terms of the restrictive covenants in the Agreements. The complaint confirms that Holdings is the parent company of AMT. (D.I. 1-1 at ¶ 7) Furthermore, the Equity Agreement between Holdings and Vaughn specifies that the restrictive covenants are necessary to protect the interests of both Holdings and AMT and prevent the irreparable harm that would be caused if Vaughn provided similar services for a competitor or contacted their customers. (*Id.* at ¶¶ 47-49) On its face, the complaint plausibly alleges that Holdings has a legitimate business interest in enforcing the restrictive covenants to protect itself and its subsidiary from irreparable economic harm. *See Allegis Grp., Inc. v. Jordan*, 951 F.3d 203, 211-12 (4th Cir. 2020) (finding that employment restrictions should extend to protect business interests of both parent and employer subsidiary where parent executed incentive plan agreements and there was substantial risk of harm to subsidiaries). Vaughn does not affirmatively cite any authority to suggest otherwise. Therefore, I recommend that the court deny Vaughn's Rule 12(b)(6) motion to dismiss.

### C. Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) permits a defendant to move for a more definite statement if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Rule 12(e) has been interpreted to make relief available where a pleading is unintelligible . . . or the issues cannot be determined[.]" *Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 581 (D. Del. 2015) (internal citations omitted). Vaughn has not satisfied this standard here. Instead of suggesting that the complaint is unintelligible, Vaughn seeks more detailed information on "exactly what Ms. Vaughn has done to violate the restrictive covenants in her Employment Agreement." (D.I. 26 at 17) Typically, however, "the court restricts the use of this motion to pleadings suffering from 'unintelligibility rather than the want of detail.'" *Retzlaff v. Horace Mann Ins.*, 738 F. Supp. 2d 564, 568-69 (D. Del. 2010) (quoting *U.S. v. Bd. of Harbor Comm'rs*, 73 F.R.D. 460, 462 (D. Del. 1977)). Consequently, pursuant to Rule 72(a), the court denies Vaughn's Rule 12(e) request for a more definite statement. *See Remole v. Trans Union, LLC*, 2022 WL 36926, at *1 n.1 (W.D. Ky. Jan. 3, 2022) (citing cases in support of "the consensus . . . that Rule 12(e) motions are treated as non-dispositive.").

### III. CONCLUSION

For the foregoing reasons I recommend that the court DENY Vaughn's motion to transfer and her alternative request for dismissal. (D.I. 25) Vaughn's motion for a more definite statement is DENIED pursuant to Rule 72(a). (D.I. 25) Vaughn's motion to supplement the record is DENIED. (D.I. 38) Plaintiffs' cross-motion to strike portions of the reply brief is DENIED as moot. (D.I. 40)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 3, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE