## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Gordian Medical, Inc., d/b/a American Medical Technologies, and AMT Ultimate Holdings, L.P., | ) ) ) | C/A No. 1:22-cv-00319-MN-SRF |
| | ) | |
| Plaintiffs, | ) | **DEFENDANT VAUGHN'S** |
| | ) | **ANSWER AND COUNTERCLAIM** |
| | ) | |
| vs. | ) | **(Jury Trial Demanded)** |
| | ) | |
| Misty Vaughn, | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |
| | | |
| Misty Vaughn, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Gordian Medical, Inc., d/b/a American Medical Technologies, | ) ) | |
| | ) | |
| Counterclaim-Defendant. | ) | |
| _____ | ) | |

Defendant, Misty Vaughn, by and through her undersigned counsel, hereby submits this Answer and Counterclaim in response to Plaintiffs' Complaint.

### FOR A FIRST DEFENSE
### (General Denial)

1.          Each and every allegation of the Complaint not specifically admitted or qualified is hereby denied, and strict proof thereof is demanded.

2.          Defendant denies the allegations in Paragraph 1, as written, and specifically denies that she committed any breach of the Employment Agreement with Plaintiff Gordian Medical, Inc. (hereinafter "Plaintiff AMT") or the Incentive Unit Grant Agreement with Plaintiff

AMT Ultimate Holdings, L.P. (hereinafter "Plaintiff Holding Company"). As set forth in further detail hereinbelow, Defendant also denies that certain provisions of these two Agreements are enforceable under applicable law.

3.          In responding to the allegations in Paragraph 2, Defendant admits that the document attached as Exhibit A to the Complaint appears to be a true and correct copy of the Employment Agreement Defendant signed with Plaintiff AMT on or about June 10, 2021. Defendant craves reference to the Employment Agreement, which speaks for itself. As set forth in further detail hereinbelow, Defendant denies that certain provisions of the Employment Agreement are enforceable under applicable law.

4.          In responding to the allegations in Paragraph 3, Defendant lacks knowledge or information to form a belief as to Plaintiffs' underlying motivations for filing this lawsuit and, therefore, denies Plaintiffs' characterization of what Plaintiffs seek in this lawsuit. Defendant admits that she is currently employed by Curitec, LLC (hereinafter "Curitec") and that Curitec is a competitor of Plaintiff AMT's in certain aspects of the wound-care industry for long-term care communities. Defendant denies the remaining allegations of Paragraph 3.

5.          In responding to the allegations of Paragraph 4, Defendant lacks knowledge or information to form a belief as to whether AMT was actually founded in 1994 and, therefore, denies the same. Defendant admits the remaining allegations of Paragraph 4, upon information and belief. Defendant notes that the allegations in Paragraph 4 are essentially taken verbatim from Plaintiff AMT's web-site, which information is readily available and accessible to the public.

6.          In responding to the allegations in Paragraph 5, Defendant admits that she was originally hired by Plaintiff AMT as an independent contractor starting in 2001, and that she

became an employee of the company in 2007 or 2008. Defendant admits the remaining allegations in Paragraph 5.

7.        In responding to the allegations in Paragraph 6, Defendant admits that was she given the title of Senior VP of Post-Acute Operations & Clinical Services at AMT on or about June 14, 2021. Defendant denies the remaining allegations of Paragraph 6.

8.        In responding to the allegations in Paragraph 7, Defendant lacks knowledge to form a belief as to the legal relationship between Plaintiff AMT and Plaintiff Holding Company and, therefore, denies the same. Defendant affirmatively alleges that she has never been an employee, officer, partner, or owner of Plaintiff Holding Company

9.        In responding to the allegations in Paragraph 8, Defendant lacks knowledge or information to form a belief as to Plaintiffs' underlying motivations for filing this lawsuit and, therefore, denies Plaintiffs' characterization of the remedies Plaintiffs seek in this lawsuit. Defendant denies that she has violated any enforceable contractual rights of Plaintiffs' and denies that she or Curitec has caused any irreparable harm to Plaintiff AMT.

10.        Defendant denies the allegations of Paragraph 9.

11.        In responding to the allegations in Paragraph 10, Defendant lacks knowledge or information to form a belief as to the truth or falsity of the allegations Paragraph 10 and, therefore, denies the same. Defendant would affirmatively allege that she has never been an employee, officer, partner, or owner of Plaintiff Holding Company.

12.        Defendant admits the allegations of Paragraph 11, upon information and belief.

13.        Defendant admits the allegations of Paragraph 12, but believes that her personal address should be redacted from the public record in this case.

14.        Defendant admits the allegations in Paragraph 13.

15.        Defendant admits the allegations in Paragraph 14, upon information and belief.

16.        In responding to the allegations in Paragraph 15, Defendant admits that Curitec does business in numerous states throughout the United States.  Defendant would affirmatively allege that she has not personally conducted any business for Curitec in the State of Delaware. Defendant denies the remaining allegations of Paragraph 15.

17.        Paragraph 16 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant admits that this Court has subject-matter jurisdiction over the alleged claims raised in Plaintiffs' Complaint, based on diversity of citizenship as asserted in her Notice of Removal of this case from the Court of Chancery of the State of Delaware.  Defendant denies that she has committed any wrongful or unlawful acts as alleged in Plaintiffs' Complaint and denies that either Plaintiff is entitled to equitable relief against her.   Defendant denies the remaining allegations of Paragraph 16.

18.        Paragraph 17 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the waiver of personal jurisdiction in the Employment Agreement is valid as a matter of law because it was a product of overreaching by Plaintiff AMT as part of a contract of adhesion. Defendant denies that she committed any wrongful or unlawful acts in violation of any statutory or common law of the State of Delaware or that she violated any enforceable provisions of the Employment Agreement. Defendant denies the remaining allegations of Paragraph 17.

19.        In responding to the allegations of Paragraph 18, Defendant lacks knowledge or information to form a belief as to whether AMT was actually founded in 1994 and, therefore, denies the same.  Defendant admits the remaining allegations of Paragraph 18, upon information

and belief.  Defendant notes that the allegations in Paragraph 18, which are almost identical to those in Paragraph 4, are essentially taken verbatim from Plaintiff AMT's web-site, which information is readily available and accessible to the public.

20.          In responding to the allegations of Paragraph 19, Defendant admits the general proposition that the success of Plaintiff AMT's business, like that of almost any other business venture, is directly linked to developing and maintaining relationships with its clients or customers.  Defendant denies that she has done anything to interfere with any of Plaintiff AMT's business relationships with clients, either before or after her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 19.

21.          In responding to the allegations of Paragraph 20, Defendant admits the general proposition that Plaintiff AMT, like any other business venture, has expended time, expense, and resources developing its client base throughout the United States.  Defendant denies that she has done anything to interfere with any of Plaintiff AMT's business relationships with clients, either before or after her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 20.

22.          In responding to the allegations in Paragraph 21, Defendant admits that she started working for Plaintiff AMT as an independent contractor on or about December 15, 2001 and that she held various positions for Plaintiff AMT, ultimately being assigned the title of Senior VP of Post-Acute Operations & Clinical Services in 2021.  Defendant denies the remaining allegations of Paragraph 21.

23.          In responding to Paragraph 22, Defendant admits that, as Senior VP of Post-Acute Operations & Clinical Services at AMT, she was involved in negotiating AMT's supply agreements and was aware of the formulary, pricing, payment, and other terms that AMT was

able to negotiate with suppliers.  Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 22 is protected as confidential, trade secret information of AMT's.  Defendant would affirmatively allege that formulary and pricing information cannot constitute a trade secret of AMT's because such information is routinely provided to the public, and that payment information for goods and services provided by AMT, like other DME companies, is set by billing codes and reimbursement rates established by Medicare and other insurance companies, not by AMT.  Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT. Defendant denies the remaining allegations of Paragraph 22.

24.        In responding to Paragraph 23, Defendant admits that, in her various positions at AMT, she worked on numerous projects and strategic initiatives for AMT, many of which were never implemented prior to her resignation from AMT.  Defendant also admits that during her employment with AMT, she developed professional relationships with vendors and strategic business partners of AMT.  Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 23 is protected as confidential, trade secret information of AMT's.  Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 23.

25.         In responding to Paragraph 24, Defendant admits that, during her tenure with AMT, she was involved in developing the pricing-related formulary used by AMT's clinicians in the field. Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 24 is protected as confidential, trade secret information of AMT's. Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 24.

26.         In responding to Paragraph 25, Defendant admits that, during her tenure with AMT, she was familiar with the metrics and reporting systems used within AMT for the purpose of assessing performance, evaluating employees, and improving financial performance.  Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 25 is protected as confidential, trade secret information of AMT's.  Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT. Defendant denies the remaining allegations of Paragraph 25.

27.         In responding to Paragraph 26, Defendant admits that, during her tenure with AMT, she was involved in AMT's efforts to develop a new software program and that she supervised the clinical lead on that project.  Defendant further admits that the development of the program involved significant time, resources, and expense for AMT.     Defendant would

affirmatively allege that at the time of her resignation from AMT in January 2022, the program at issue was not in place, but was scheduled to be rolled out in the second quarter of 2022. Defendant has been informed and believes that many of the software developers who were working on this program for AMT were located in Ukraine and that many of them fled the country upon Russia's invasion of Ukraine in or about February 2022, and that the program at issue has never been completed. Whether or not the components of the software program under development, such as product selection, billing compliance, and other items are is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant. To the extent that a response is required, Defendant denies that the information described in Paragraph 26 is protected as confidential, trade secret information of AMT's. Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT. Defendant denies the remaining allegations of Paragraph 26.

28.         In responding to Paragraph 27, Defendant admits that, at various times during her tenure with AMT, she was involved in designing and overseeing AMT's training and ongoing clinical education program for its clinicians who service nursing home customers. Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant. To the extent that a response is required, Defendant denies that the information described in Paragraph 27 is protected as confidential, trade secret information of AMT's. Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT.

Defendant denies the remaining allegations of Paragraph 27.

29.         In responding to Paragraph 28, Defendant admits AMT generally conducts regular business and clinical reviews with some of its clients and that, during her tenure with AMT, she attended some of those meetings with customer executives.  Defendant also admits that throughout her experience in the industry, she generally developed extensive knowledge of AMT's customers.  Whether or not such knowledge is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 28 is protected as confidential, trade secret information of AMT's.  Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 28.

30.         In responding to Paragraph 29, Defendant admits that during her tenure with AMT, the company provided clinical education to its customers as part of its services and that, as a general matter, clinical education is an important aspect of establishing and maintaining customer relationships in this industry.  Defendant also admits that, during her tenure with AMT, she was involved in supervising AMT's clinical education department and in overseeing AMT's clinical education programs.  Defendant affirmatively alleges that she was not directly involved in developing, creating, or delivering any external education programs for at least 5 years prior to her resignation from AMT.  Whether or not such information is protected as confidential, trade secret information of AMT is a legal conclusion, not a factual allegation, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the information described in Paragraph 29 is protected as confidential, trade secret information of

AMT's.  Defendant further denies that she has used or disclosed any confidential or trade secret information of Plaintiff AMT's to the company's detriment following her resignation from employment with Plaintiff AMT.  Defendant denies the remaining allegations of Paragraph 29. Defendant Roach lacks information to form a belief as to the truth or falsity of Paragraph 29 and, therefore, denies the same.

31.        Defendant admits the allegations in Paragraph 30.  With respect to the specific components of the 2020 Employment Agreement, Defendant craves reference to the actual document, which speaks for itself.

32.        In responding to Paragraph 31, Defendant admits that the upper management of AMT changed in early- to mid-2021, upon the company's merger with Restorix Health and that she was informed that the Board of AMT had agreed to accelerate the "success fee" payments that were provided to her in 2020 upon the sale of AMT to private equity firms.  Defendant admits that the success fee payments, which were originally to be paid out over a 5-year period, were paid in June and July 2021.  Defendant denies that the accelerated payments were a condition of her signing a new Employment Agreement in 2021.  Defendant affirmatively alleges that she and other members of AMT's senior management were told that the accelerated payments reflected the company's view that there were better ways to retain employees than golden handcuffs, and that the company wanted the senior management to stay because they wanted to help with the success of the company, not because they had to stay for a specific time in order to receive all of the success fee payments.  Defendant also affirmatively alleges that she and other members of AMT's senior management were told by the new president of AMT that the purpose of the new contracts was so that all members of senior management had the same employment terms as he had.  Defendant craves reference to the 2021 Employment Agreement

and the 2020 Employment Agreement, which speak for themselves. Defendant denies the remaining allegations of Paragraph 31.

33.         In responding to the allegations of Paragraph 32, Defendant admits that she signed the Employment Agreement on or about June 10, 2021. Defendant craves reference to the 2021 Employment Agreement and the 2020 Employment Agreement, which speak for themselves. Defendant denies the remaining allegations of Paragraph 32.

34.         In responding to the allegations of Paragraph 33, Defendant craves reference to the Employment Agreement, which speaks for itself. Defendant denies that she was provided access to any additional information that she did not already have access to in exchange for signing the Employment Agreement. Defendant denies the remaining allegations of Paragraph 33.

35.         In responding to the allegations of Paragraph 34, Defendant craves reference to the Employment Agreement, which speaks for itself. Defendant denies that she has improperly used or disclosed any of AMT's protected confidential or trade secret information to any person or entity following her resignation of employment with AMT. Defendant denies the remaining allegations of Paragraph 34.

36.         In responding to the allegations of Paragraph 35, Defendant craves reference to the Employment Agreement, which speaks for itself. Defendant denies that she retained or failed to return any AMT property in her possession, upon her resignation of employment with AMT. Defendant affirmatively alleges that she provided her company computer and telephone to AMT's IT department prior to her leaving for Mexico in early January 2022, before the effective date of her resignation from AMT, and that the IT Department removed all company property from her devices. Defendant denies the remaining allegations of Paragraph 35.

37.        In responding to the allegations of Paragraph 36, Defendant craves reference to the Employment Agreement, which speaks for itself.  Defendant denies that she has caused any damages to AMT, much less irreparable harm to AMT, following her resignation of employment with AMT.  Defendant denies the remaining allegations of Paragraph 36.

38.        In responding to the allegations of Paragraph 37, Defendant craves reference to the Employment Agreement, which speaks for itself.  Defendant denies that the restrictive covenant in the Employment Agreement is valid or enforceable under applicable law.  Defendant denies the remaining allegations of Paragraph 37.

39.        In responding to the allegations of Paragraph 38, Defendant craves reference to the Employment Agreement, which speaks for itself.  Defendant denies that the restrictive covenant in the Employment Agreement is valid or enforceable under applicable law.  Defendant denies the remaining allegations of Paragraph 38.

40.        In responding to the allegations of Paragraph 39, Defendant craves reference to the Employment Agreement, which speaks for itself.  Defendant denies that the restrictive covenants in the Employment Agreement are valid or enforceable under applicable law and further denies that AMT has been irreparably harmed or would be entitled to any injunctive relief against her.  Defendant denies the remaining allegations of Paragraph 39.

41.        Paragraph 40 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that any aspect of her employment with AMT should be governed by the laws of the State of Delaware.

42.        Paragraph 41 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies

that the purported mandatory forum selection clause in the Employment Agreement is valid.

43.     Paragraph 42 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the restrictive covenants in the Employment Agreement are valid or enforceable under applicable law.

44.     In responding to the allegations in Paragraph 43, Defendant admits that, pursuant to the Incentive Unit Grant Agreement she signed on or about July 31, 2021, she was granted the opportunity to receive certain Class B units of Plaintiff Holding Company, pursuant to a 5-year vesting schedule starting on July 31, 2022, with 20% of the units vesting each anniversary through July 31, 2026.  Defendant affirmatively alleges that the units never vested and had so many contingencies and conditions that they were worthless to her.  Defendant lacks knowledge or information to form a belief as to what other executives at AMT were given similar grants and, therefore, denies the same.  Defendant craves reference to the terms of the Incentive Unit Grant Agreement, which speak for themselves.  Defendant denies the remaining allegations of Paragraph 43.

45.     In responding to the allegations in Paragraph 44, Defendant denies that she has ever been an employee of Plaintiff Holding Company.  In further responding to the allegations in Paragraph 44, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself.  Defendant denies that she was provided access to any additional information that she did not already have access to in exchange for signing the Incentive Unit Grant Agreement. Defendant denies the remaining allegations of Paragraph 44.

46.     In responding to the allegations of Paragraph 45, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself.  Defendant denies that she has

improperly used or disclosed any of AMT's protected confidential or trade secret information to any person or entity following her resignation of employment with AMT. Defendant denies the remaining allegations of Paragraph 45.

47.        In responding to the allegations of Paragraph 46, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself. Defendant denies that she retained or failed to return any AMT property in her possession, upon her resignation of employment with AMT. Defendant affirmatively alleges that she provided her company computer and telephone to AMT's IT department prior to her leaving for Mexico in early January 2022, before the effective date of her resignation from AMT, and that the IT Department removed all company property from her devices. Defendant denies the remaining allegations of Paragraph 46.

48.        In responding to the allegations of Paragraph 47, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself. Defendant denies that she has caused any damages to AMT, much less irreparable harm to AMT, following her resignation of employment with AMT. Defendant denies the remaining allegations of Paragraph 47.

49.        In responding to the allegations of Paragraph 48, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself. Defendant denies that the restrictive covenant in the Incentive Unit Grant Agreement is valid or enforceable under applicable law. Defendant denies the remaining allegations of Paragraph 48.

50.        In responding to the allegations of Paragraph 49, Defendant craves reference to the Incentive Unit Grant Agreement, which speaks for itself. Defendant denies that the restrictive covenants in the Incentive Unit Grant Agreement are valid or enforceable under applicable law. Defendant denies the remaining allegations of Paragraph 49.

51.        Paragraph 50 asserts a legal conclusion, not factual allegations, and does not

require a response from Defendant.  To the extent that a response is required, Defendant denies that any aspect of her employment with AMT should be governed by the laws of the State of Delaware.

52.        Paragraph 51 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the purported mandatory forum selection clause in the Incentive Unit Grant Agreement is valid.

53.        Paragraph 52 asserts a legal conclusion, not factual allegations, and does not require a response from Defendant.  To the extent that a response is required, Defendant denies that the restrictive covenants in the Incentive Unit Grant Agreement are valid or enforceable under applicable law.

54.        In responding to the allegations of Paragraph 53, Defendant admits that she was given access to trade secret, confidential, and proprietary information of AMT well before she signed the Employment Agreement in mid-2021, and that she continued to have access to that information after she was given the title of Senior VP of Post-Acute Operations & Clinical Services.   Defendant denies the remaining allegations Paragraph 53.

55.        In responding to the allegations of Paragraph 54, Defendant admits that she was given access to information about AMT itemized in Paragraph 54 well before she signed the Employment Agreement in mid-2021, and that she continued to have access to that information after she was given the title of Senior VP of Post-Acute Operations & Clinical Services. Defendant denies the remaining allegations Paragraph 54.

56.        In responding to the allegations of Paragraph 55, Defendant admits, as a general matter, that Plaintiff AMT expended time, effort, and resources to develop information relating

to its business practices and client relationships.  Defendant lacks knowledge or information about what value AMT places on such information and, therefore, denies the same.  Defendant denies the remaining allegations of Paragraph 55.

57.        In responding to the allegations of Paragraph 56, Defendant denies that all of the information listed or referenced in Paragraphs 53-55 is not known to the public or is not readily ascertainable.

58.        In responding to the allegations of Paragraph 57, Defendant asserts that such allegations are wholly speculative and hypothetical.  Defendant denies that she has done anything to exploit any confidential, proprietary, or trade secret information of AMT to gain an advantage or benefit for a competitor of AMT or to cause any detriment to Plaintiff AMT. Defendant denies the remaining allegations of Paragraph 57.

59.        In responding to the allegations of Paragraph 58, Defendant admits that, during her employment with Plaintiff AMT, the company had implemented certain safeguards to maintain the confidentiality of certain information, including using a secure server for some information, password-protecting access to some databases, and otherwise limiting access to certain information to only those employees with a specific need to know such information. Defendant denies that she ever misappropriated any confidential, trade secret, or proprietary information of Plaintiff AMT's and further denies that she ever attempted to gain unauthorized access to any such information of Plaintiff AMT's.  Defendant affirmatively alleges that all of her credentials to access any such information were terminated prior to her resignation from the company.  Defendant denies the remaining allegations of Paragraph 58.

60.        In responding to the allegations of Paragraph 59, Defendant admits that after AMT was purchased by private equity firms in mid-2020, Plaintiff AMT began to require

employees to sign employment agreements containing confidentiality, non-solicitation, and non-disclosure provisions.  Defendant denies the remaining allegations of Paragraph 59.

61.         In responding to the allegations of Paragraph 60, Defendant admits that she informed her co-workers at AMT that, upon her resignation from the company on or about January 12, 2022, she was going to Mexico and Panama to do some bird-watching, that she intended to work on the rental properties that she and her partner owned, and that she was going to figure out what would happen next for her.  Defendant also told her co-workers that if they needed to reach her, they could email her at her ChillInn or NoWorkInn email addresses. Defendant denies the remaining allegations of Paragraph 60.

62.         In responding to the allegations of Paragraph 61, Defendant admits that on or about February 7, 2022, she told Therese Hernandez at AMT that she had taken a position at Curitec.  Defendant denies the remaining allegations of Paragraph 61.

63.         In responding to the allegations of Paragraph 62, Defendant admits that since her resignation from AMT and her accepting a position at Curitec, she has had limited, sporadic communications with former co-workers from AMT, whom Defendant considers to be her personal friends, such as happy birthday wishes or condolences on the death of a family member. Defendant affirmative alleges that she never had any business-related communications with any AMT employees after her resignation and that she never recruited or solicited any AMT employee to leave their employment with AMT or come to work for Curitec.  Defendant denies the remaining allegations of Paragraph 62.

64.         Defendant admits the allegations of Paragraph 63.  Defendant craves reference to the letter of February 11, 2022, which speaks for itself.

65.         Defendant admits the allegations of Paragraph 64.  Defendant craves reference to

the letter of February 11, 2022, which speaks for itself.

66.         In responding to the allegations of Paragraph 65, Defendant admits that her attorney has assured AMT's attorneys that she has not solicited any customers, clients, or employees of AMT following her resignation and that she has no intention to do so within 24 months following her resignation of employment from AMT, and that Defendant has not used, misappropriated, or disclosed any confidential, trade secret, or proprietary information of AMT. Defendant denies the remaining allegations of Paragraph 65, as written.

67.         Defendant denies the allegations of Paragraph 66.

68.         Defendant admits that since her resignation of employment from AMT, she has contacted some of the vendors or suppliers that AMT also uses, but that such contact has not had any adverse impact on AMT's business or relationships with those vendors or suppliers. Defendant denies the remaining allegations of Paragraph 67.

69.         In responding to the allegations of Paragraph 68, Defendant does not have any knowledge or information to form a belief as to what Curitec knows about her former employment with AMT and, therefore, denies such allegations.  Defendant denies that the alleged post-employment obligations in the Employment Agreement and the Incentive Unit Grant Agreement are enforceable under applicable law.  Defendant denies the remaining allegations of Paragraph 68.

70.         In responding to the allegations of Paragraph 69, Defendant lacks knowledge or information to form a belief as to all communications between Curitec or its counsel and Plaintiffs or their counsel and, therefore, denies the same.

71.         In responding to the allegations of Paragraph 70, Defendant admits that she is a current, at-will employee of Curitec.  Defendant denies the remaining allegations of Paragraph

70.

72.         In responding to the allegations of Paragraph 71, Defendant denies that she has engaged in any unlawful conduct during or after her employment with AMT and further denies that her employment with Curitec has caused any damages to Plaintiffs.  Defendant denies the remaining allegations of Paragraph 71.

73.         In responding to the allegations in Paragraph 72, Defendant denies that she has used or disclosed any confidential information of Plaintiffs', denies that she has violated any enforceable contractual provision of the Employment Agreement or the Incentive Unit Grant Agreement, and denies that Plaintiffs are entitled to any injunctive relief. Defendant denies the remaining allegations of Paragraph 72.

74.         Defendant denies the allegations of Paragraph 73.

75.         Defendant denies the allegations of Paragraph 74.

76.         In responding to the allegations of Paragraph 75, Defendant admits that Plaintiffs are not entitled to any remedy at law.  Defendant denies the remaining allegations of Paragraph 75.

77.         In responding to Paragraph 76, Defendant incorporates by reference the responses of the preceding paragraphs as if repeated verbatim.

78.         Defendant denies the allegations of Paragraph 77.

79.         Defendant denies the allegations of Paragraph 78.

80.         Defendant denies the allegations of Paragraph 79.

81.         Defendant denies the allegations of Paragraph 80.

82.         Defendant denies the allegations of Paragraph 81.

83.         Defendant denies the allegations of Paragraph 82.

84.        Defendant denies the allegations of Paragraph 83.

85.        Defendant denies the allegations of Paragraph 84.

86.        Paragraphs 85 through 94 relate only to former Defendant Curitec, which has been dismissed as a party to this case.  To the extent that a response is required, Defendant denies the allegations of Paragraphs 85 through 94.

87.        Defendant denies that Plaintiffs are entitled to any of the relief demanded in their Prayer for Judgment, including sub-paragraphs a. though f.

**FOR A SECOND DEFENSE**
**(Failure to State a Claim)**

88.        Plaintiffs' Complaint fails, in whole or in part, to state a cause of action upon which relief can be granted.

**FOR A THIRD DEFENSE**
**(Waiver)**

89.        Plaintiffs' Complaint is barred, in whole or in part, by the equitable doctrine of waiver.

**FOR A FOURTH DEFENSE**
**(Estoppel)**

90.        Plaintiffs' Complaint is barred, in whole or in part, by the equitable doctrine of estoppel.

**FOR A FIFTH DEFENSE**
**(Unclean Hands)**

91.        Plaintiffs' Complaint is barred, in whole or in part, by the equitable doctrine of unclean hands.

**FOR A SIXTH DEFENSE**
**(Prior Breach of Agreement)**

92.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs committed one or more prior breaches of their Employment Agreements with Defendant, which excused any further obligation or responsibility of Defendant to continue to perform her obligations under the contracts.

### FOR A SEVENTH DEFENSE
**(Failure of Consideration)**

93.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs failed or refused to provide to Defendant all of the promised consideration for the Employment Agreement, which excuses any further obligation or responsibility of Defendant to continue to perform her obligations under the contract.

### FOR AN EIGHTH DEFENSE
**(Failure to Mitigate Damages)**

94.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs failed to take reasonable steps to mitigate any damages they are alleged to have suffered.

### FOR A NINTH DEFENSE
**(No Additional, Valuable Consideration Provided)**

95.        Plaintiffs' Complaint is barred, in whole or in part, because the Employment Agreement and the Incentive Unit Grant Agreement were not supported by additional, valuable consideration provided to Defendant, beyond what she was already due under the 2020 Employment Agreement, which Plaintiff AMT breached by failing to provide the promised grants of equity in the company within no later than sixty (60) days of her signing of the 2020 Employment Agreement.

### FOR A TENTH DEFENSE
**(Covenant Not to Compete Unenforceable–Overbreadth in Scope)**

96.        Plaintiffs' Complaint is barred, in whole or in part, because the purported

covenants not to compete are unenforceable, as a matter of law, because they are overly broad in terms of the scope of prohibited employment activities subsequent to Defendant's employment with Plaintiff AMT and because they are not necessary to protect any legitimate business interests of Plaintiffs.

## FOR AN ELEVENTH DEFENSE
### (Covenant Not to Compete Unenforceable–Overbreadth in Geography)

97.        Plaintiffs' Complaint is barred, in whole or in part, because the purported covenants not to compete are unenforceable, as a matter of law, because the geographic scope of the entire United States and potentially world-wide is overly broad and unreasonable on its face and is not necessary to protect any legitimate business interests of Plaintiffs..

## FOR A TWELFTH DEFENSE
### (Covenant Not to Compete–Unduly Harsh and Restrictive)

98.        Plaintiffs' Complaint is barred, in whole or in part, because the purported covenants  not to compete are unduly harsh and restrictive with respect to Defendant's ability to earn a livelihood in the profession and industry to which she has devoted most of her adult career.

## FOR A THIRTEENTH DEFENSE
### (Restrictive Covenants–Violative of Public Policy)

99.         Plaintiffs' Complaint is barred, in whole or in part, because the restrictive covenants are violative of the public policy of the State of South Carolina or the State of Delaware, because they are an unreasonable restraint on fair trade and are designed to diminish regular, legitimate business competition.

## FOR A FOURTEENTH DEFENSE
### (Confidential Information–Common Knowledge)

100.        Plaintiffs' Complaint is barred, in whole or in part, because the alleged items of

confidential, trade secret, or proprietary information described in Plaintiffs' Complaint are matters of common knowledge or are matters that are readily ascertainably by the public through legitimate means.

## FOR A FIFTEENTH DEFENSE
### (Confidential Information–Disclosure to Third Parties)

101.        Plaintiffs' Complaint is barred, in whole or in part, because the alleged items of confidential, trade secret, or proprietary information described in Plaintiffs' Complaint are regularly disclosed by Plaintiff AMT to third-parties outside of Plaintiff AMT, including customers, clients, and prospective customers and clients.

## FOR A SIXTEENTH DEFENSE
### (Confidential Information–Failure to Take Reasonable Measures to Protect)

102.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiffs failed to take reasonable measures to protect such items of confidential, trade secret, or proprietary information described in Plaintiffs' Complaint from becoming known to third parties outside of Plaintiffs.

## FOR A SEVENTEENTH DEFENSE
### (Confidential Information–Violation of Public Policy)

103.        Plaintiffs' Complaint is barred, in whole or in part, because some of the alleged items of confidential, trade secret, or proprietary information described in Plaintiffs' Complaint are unlawful or illegal and are used by Plaintiff AMT to commit fraud against Medicare or other insurers or are being used by Plaintiff AMT to violate the False Claims Act.

## FOR AN EIGHTEENTH DEFENSE
### (Confidential Information–De Facto Non-Compete Agreement)

104.        Plaintiffs' Complaint is barred, in whole or in part, because the confidentiality and non-disclosure provisions of the Employment Agreement and the Incentive Unit Grant

Agreement define confidential, trade secret, and proprietary interest so broadly as to operate as a de facto covenant not to compete, with no restriction on time or geography and are, therefore unenforceable as a matter of law.

### FOR A NINETEENTH DEFENSE
**(Failure of Plaintiff AMT to Properly Register to Do Business in Delaware)**

105.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiff AMT has failed to comply with Title 8, Section 383(a) of the Delaware Code Annotated, as a foreign corporation that has done business in the State of Delaware without being authorized to conduct business in the State of Delaware, and, upon information and belief, Plaintiff AMT has not paid to the State of Delaware all fees, penalties, and franchise taxes for the years or parts thereof during which it did business in the State of Delaware without authority.

### FOR A TWENTIETH DEFENSE
**(Plaintiff Holding Company Not Real Party in Interest)**

106.        Plaintiffs' Complaint is barred, in whole or in part, because Plaintiff Holding Company is not the real party in interest in this case, because it has never had an employment relationship with Defendant and, therefor, has no legitimate interest in preventing Defendant from working anywhere following her departure from Plaintiff AMT.

### COUNTERCLAIM

Defendant, by way of her Counterclaim in this matter, would allege and show upon the Court the following:

### I.  Parties, Jurisdiction, and Venue

107.        Defendant-Counterclaimant, Misty Vaughn, is a citizen and resident of Greenville

County, South Carolina.

108.        Upon information and belief, Plaintiff-Counterclaim Defendant, Gordian Medical, Inc., d/b/a "American Medical Technologies" or "AMT" (hereinafter "Plaintiff AMT") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in the State of California.  Upon information and belief, Plaintiff AMT is not properly registered to conduct business in the State of Delaware, although Plaintiff AMT has conducted business within the State of Delaware at all times relevant to this Counterclaim.

109.        Upon information and belief, Plaintiff-Counterclaim Defendant, AMT Ultimate Holdings, L.P. (hereinafter "Plaintiff Holding Company") is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in the State of Delaware.  Defendant has never been a partner, owner, or officer of Plaintiff Holding Company.

110.        This Court has personal jurisdiction over Plaintiffs AMT and Plaintiff Holding Company by virtue of the fact that Plaintiffs brought the underlying complaint against Defendant in the Chancery Court for the State of Delaware.

111.        This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, based on complete diversity of citizenship of the parties, and the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs.

112.        This Counterclaim is brought for declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 and the common law of the States of South Carolina and/or Delaware.

113.        Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiffs filed the original complaint against Defendant within the State of Delaware.

**II.  Facts.**

114.        Defendant was hired as Plaintiff AMT's first employee starting on or about December 1, 2001 as a sales/clinical representative for the Dallas-Ft. Worth, Texas area.

115.        Defendant received numerous promotions commensurate with her job performance, and her last position with Plaintiff AMT was Senior Vice President of Post Acute Operations and Clinical Services.

116.        Throughout Defendant's employment with Plaintiff AMT, the company has grown to over 220 field employees and between 150-200 office employees.  The company was sold to a private equity firm in or about July 2020 and merged with another company called Restorix Health in or about June 2021.

117.        Defendant worked for Plaintiff AMT primarily out of her home in Greenville County, SC since approximately 2015.

118.        At all times relevant hereto, Defendant was a good and faithful employee of Plaintiff AMT and performed her job at an exceptional level.  She received regular promotions, increases in her  base salary, incentive bonuses, and other benefits and perquisites commensurate with her job performance.

119.        On or about June 10, 2021, Defendant signed an Employment Agreement with Plaintiff AMT, which expressly superseded all other agreements between Defendant and Plaintiff AMT.  A true and accurate copy of the Employment Agreement was attached as Exhibit A to the original Complaint in this case.

120.        During her employment with Plaintiff AMT, Defendant raised a number of issues and concerns regarding some of Plaintiff AMT's policies, procedures, and practices, which Defendant believes were unlawful and unethical and could amount to Medicare fraud, including, but not limited to, the following: (1) overstocking of supplies at facilities, without follow-up or

monitoring of facilities to determine whether supply levels were appropriate and necessary; (2) systematically writing off 20% co-pay obligations of patients as hardships, without proper justification and documentation, and failing to self-report the unlawful practice to the Centers for Medicare and Medicaid Services ("CMS"); and (3) regularly overbilling or upcoming debridements as surgical debridements instead of sharp debridements. These issues were not satisfactorily addressed or remedied by Plaintiff AMT.

121.     Defendant resigned her employment with Plaintiff AMT effective January 12, 2022, after providing 30 days' notice of her resignation.

122.     On February 11, 2022, Defendant received an email and letter from attorney Ryan J. Morley from the law firm of Littler Mendelson, P.C., on behalf of Plaintiff AMT, requesting Defendant to cease and desist her new employment with Curitec, LLC, a direct competitor of Plaintiff AMT. Mr. Morley's letter of February 11, 2022 accused Defendant of violating various restrictive covenants in her Employment Agreement with Plaintiff AMT, including non-competition, non-solicitation/non-interference, and confidentiality provisions. The letter demanded that Defendant resign her employment with Curitec immediately and sign an affirmation under penalty of perjury confirming that she has resigned her employment with Curitec and attesting that she would abide by all of the restrictive covenants in her Employment Agreement with Plaintiffs.

123.     Mr. Morley's letter of February 11, 2022, threatened legal action by Plaintiff AMT against Defendant.

**FOR A TWENTY-FIRST DEFENSE**
**AND BY WAY OF COUNTERCLAIM (COUNT 1)**
**(Declaratory Judgment)**

124.     Defendant repeats and realleges each and every allegation of the preceding

Paragraphs as if restated herein verbatim.

125.     Defendant has a case of actual controversy against Plaintiffs relating to the validity and enforceability of the restrictive covenants in her Employment Agreement with Plaintiff AMT and her Incentive Unit Grant Agreement with Plaintiff Holding Company.

126.     Defendant seeks a judgment of the Court declaring the rights and responsibilities of the parties to the Employment Agreement and the Incentive Unit Grant Agreement, specifically including the following findings of fact and conclusions of law:

     1.     that the Employment Agreement is not a binding and enforceable contract because Defendant did not receive any additional, valuable consideration from Plaintiffs in exchange for her signing the Agreement;

     2.     that the Non-Competition and Non-Solicitation provisions of the Employment Agreement and the Incentive Unit Grant Agreement are not enforceable because the geographic territory, which is defined as the entire United States and any other country in which Plaintiff AMT conducts business during Defendant's employment or for 24 months thereafter, is overly broad and unreasonable;

     3.     that the Non-Competition and Non-Solicitation provisions of the Employment Agreement and the Incentive Unit Grant Agreement are not enforceable because they are substantially broader than is necessary to protect any legitimate business interest of Plaintiffs;

     4.     that the Non-Competition and Non-Solicitation provisions of the Employment Agreement and the Incentive Unit Grant Agreement are not enforceable because they are unduly harsh and oppressive in curtailing the

legitimate efforts of Defendant to earn a livelihood in her chosen profession and industry, following her employment by Plaintiff AMT;

5.      that the Employment Agreement and the Incentive Unit Grant Agreement are not enforceable because their enforcement would violate the public policy of the State of South Carolina and/or that of the State of Delaware; and/or

6.      that the Non-Competition and Non-Solicitation provisions of the Employment Agreement and the Incentive Unit Grant Agreement cannot be amended or "blue penciled" by the Court so as to make them reasonable, valid, and enforceable.

127.      Defendant is also entitled to any and all necessary or proper relief to effectuate the Court's declaratory judgment, including injunctive relief precluding Plaintiffs from enforcing the Non-Competition and Non-Solicitation provisions of the Employment Agreement or the Incentive Unit Grant Agreement.

WHEREFORE, having fully responded to the allegations in Plaintiffs' Verified Complaint, Defendant respectfully requests that the Court enter an order dismissing the Verified Complaint, with prejudice, and requiring Plaintiffs to pay the costs and attorneys' fees incurred by Defendant in responding to the Verified Complaint.  In addition, having fully set forth her allegations against Plaintiffs by way of the foregoing Counterclaim, Defendant respectfully requests the following relief:

1.      A judgment declaring the rights and other legal relations of the parties to the Employment Agreement and the Incentive Unit Grant Agreement, including the provisions for Non-Competition and Non-Solicitation, at issue in this case, as set

forth in detail above;

2.     Any and all further, necessary or proper relief based on the Court's declaratory judgment;

3.     An order precluding Plaintiffs from enforcing the Non-Competition and Non-Solicitation provisions of the Employment Agreement and the Incentive Unit Grant Agreement at issue in this case based on the equitable doctrines of estoppel and unclean hands;

4.     Attorney's fees and costs incurred by Defendant in bringing this action; and

5.     Such other relief as this Court may deem just and proper.


**DEFENDANT HEREBY DEMANDS A JURY TRIAL ON PLAINTIFFS' CAUSE OF ACTION FOR BREACH OF CONTRACT.**

                                        Respectfully submitted,

Dated:  December 2, 2022                 */s/ Daniel C. Herr*
                                        Daniel C. Herr (No. 5497)
                                        Law Office of Daniel C. Herr, LLC
                                        1225 North King St., Suite 1000
                                        Wilmington, DE 19801
                                        (302) 483-7060 (Office)
                                        (302) 483-7065 (Facsimile)
                                        dherr@dherrlaw.com

                                        David E. Rothstein
                                        (Admitted *Pro Hac Vice*)
                                        ROTHSTEIN LAW FIRM, PA
                                        1312 Augusta Street
                                        Greenville, South Carolina 29605
                                        (864) 232-5870 (Office)
                                        (864) 241-1386 (Facsimile)
                                        drothstein@rothsteinlawfirm.com

                                        *Attorneys for Defendant Misty Vaughn*